SHAFFER ET AL., APPELLANTS,
*v.* FRONTRUNNER, INC. ET AL.,
APPELLEES.

(No. 4-88-22—Decided
September 25, 1990.)

*Arthur, O'Neill & Mertz* and *Eric
A. Mertz,* for appellants.

*Weaner, Zimmerman, Bacon,
Yoder & Hubbard, John E. Zimmerman* and *Stephen F. Hubbard,* for appellees.

SHAW, P.J. This is an appeal from the judgment of the Court of Common Pleas of Defiance County granting summary judgment in favor of defendants-appellees, Frontrunner, Inc. and W. Dale Fisher.

Appellants, Marilyn Shaffer and Mary Carothers, filed a complaint alleging that Marilyn was fired by Dale Fisher from Frontrunner, Inc. for missing work to attend jury duty and that Mary, Marilyn's mother, was fired in retaliation for Marilyn's attending jury duty.

Appellees denied the allegations set forth in the complaint and asserted that Marilyn and Mary were dismissed for their failure to produce a quality product in a timely manner. Appellees filed a motion for summary judgment.

The trial court granted appellees' motion for summary judgment after reaching the conclusion that even if appellants' claims were true there is no cause of action in Ohio for wrongful discharge upon the facts of this case.

From this decision appellants now appeal, asserting two assignments of error. Appellants' first assignment of error is:

"The trial court erred in granting the defendant-appellees' motion for summary judgment and holding that the firing of an employee by and [*sic*] employer in retaliation for serving on jury duty does not create a cause of action in favor of the employee against the employer for wrongful discharge."

Under Civ. R. 56(C), the party moving for summary judgment has the burden of proving there is no genuine issue as to any material fact. The party opposing the motion is entitled to have the evidence construed most strongly in his favor.

The trial court, in construing the

evidence most strongly in favor of the appellants, reached the following determination:

"[I]t is the finding of the court that both plaintiffs were hired by defendant, Frontrunner, Inc. as 'permanent' employees but were both within their probationary period at the time their employment was terminated. Marilyn Shaffer's employment was terminated for the reason that she missed work because of jury duty in this Court and plaintiff, Mary Carothers' employment was terminated because she was the mother of Marilyn Shaffer and in retaliation regarding her daughter's jury duty."

The trial court properly concluded from the evidence before it that in the absence of a contract to the contrary the employment relationship between the appellees and appellants was terminable at the will of either party. The concept of "employment at will" is well established in Ohio law.

"'Generally speaking, a contract for permanent employment, * * * where the employee furnishes no consideration additional to the services incident to the employment, amounts to an indefinite general hiring terminable at the will of either party, and a discharge without cause does not constitute a breach of such contract justifying recovery of damages.* * *'" *Henkel* v. *Educational Research Council of America* (1976), 45 Ohio St. 2d 249, 255, 74 O.O. 2d 415, 418, 344 N.E. 2d 118, 121-122.

Exceptions to the "employment-at-will" doctrine have been created by statute. See R.C. 4112.02, unlawful discriminatory practices; and R.C. 4113.52, right of employee to report violation of law by employer or fellow employee. However, until the recent decision of *Greeley* v. *Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St. 3d 228, 551 N.E. 2d 981, there were no recognized public policy exceptions to the "employment-at-will" doc-

trine in Ohio. *Greeley, supra,* at paragraph two of the syllabus, holds that "the right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy. * * *"

The employee in *Greeley* was discharged in derogation of R.C. 3113.213(D), which states in part:

"No employer may use an order to withhold personal earnings [to pay support], as a basis for a discharge of, or for any disciplinary action against, an employee, or as a basis for a refusal to employ a person. The court may fine an employer who so discharges or takes disciplinary action against an employee, or refuses to employ a person, not more than five hundred dollars."

In the case before us, there exists a similar statute with regard to jury duty. R.C. 2313.18 outlines prohibited actions of an employer and provides:

"(A) No employer shall discharge or threaten to discharge any permanent employee who is summoned to serve as a juror pursuant to Chapter 2313. of the Revised Code if the employee gives reasonable notice to the employer of the summons prior to the commencement of the employee's service as a juror and if the employee is absent from employment because of the actual jury service.

"(B) Whoever violates this section shall be punished as for a contempt of court pursuant to Chapter 2705. of the Revised Code."

The trial court applied R.C. 2313.18 to the facts of this case and reached the conclusion that under Ohio law there was no cause of action for wrongful discharge occurring as a result of jury duty. The trial court's decision at the time it was made was in accord with the existing interpretation of Ohio law by the Supreme Court. However, the *Greeley* opinion now

changes that interpretation. The holding in *Peerless Electric Co.* v. *Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 129 N.E. 2d 467, 468, stating "that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law" requires us to apply the *Greeley* holding to the facts of this case as the change in law occurred while this case was pending before us on direct review. See *Deskins* v. *Young* (1986), 26 Ohio St. 3d 8, 10-11, 26 OBR 7, 8-9, 496 N.E. 2d 897, 899; *Zagorski* v. *South Euclid-Lyndhurst Bd. of Edn.* (1984), 15 Ohio St. 3d 10, 12, 15 OBR 8, 10, 471 N.E. 2d 1378, 1379-1380; 23 Ohio Jurisprudence 3d (1980) 174, Courts and Judges, Section 525.

We sustain appellants' assignment of error as it pertains to Marilyn Shaffer. In Ohio, there now exists an exception to the "employment-at-will" doctrine creating a cause of action for wrongful discharge in violation of public policy as articulated in a specific statute. We believe R.C. 2313.18 legislatively announces public policy in a manner and form comparable to R.C. 3113.213(D).

Further, we believe that the policy announced and reviewed by R.C. 2313.18 is clear. The civic duty and right of an employee to serve as a venireman or juror when summoned to do so and to be absent from his normal employment to attend to those duties is protected by the statute, and discharge by an employer of an employee for absence from work occa-sioned by attendance upon jury duties is forbidden, provided the employee furnishes timely notice to the employer of expected absences for that purpose and then so serves in accordance with the provisions of R.C. 2313.18. Therefore, under *Greeley,* a cause of action does exist for wrongful discharge resulting from violation of the public policy set forth in R.C. 2313.18. Entry of summary judgment for failure to state a claim is therefore improper and prejudicial to appellant Marilyn Shaffer.

Further, we believe the language and holding of the *Greeley* decision clearly compel acknowledgment of the claim of Marilyn's mother, Mary Carothers, as well.

In granting summary judgment for the defendants in this case, the trial court expressly found that:

"* * * Marilyn Shaffer's employment was terminated for the reason that she missed work because of jury duty in this court and *plaintiff Mary Carothers' employment was terminated because she was the mother of Marilyn Shaffer and in retaliation regarding her daughter's jury duty.*"[1] (Emphasis added.)

It is important to note that the Supreme Court in *Greeley* expressly discussed the jury duty statute under consideration in the case before us, R.C. 2313.18. In holding up this statute as an example of a clearly defined public policy, the Supreme Court stated:

"* * * Jury service is a societal obligation imposed upon persons by the General Assembly and enforced by

---

[1] The findings of the trial court did not come from a determination that there was no genuine issue of fact as to the cause of discharge in this case. On the contrary, there is clearly a genuine factual dispute in the record on that point. Rather, the trial court obviously made these findings based on the belief that even if the claims were true, there was no cause of action as a matter of law. Thus, the trial court's unequivocal statements firmly establish factual assumptions upon which our own evaluation of the claims of Marilyn and Mary must be based.

the courts. Frustration of the administration of justice should not be tolerated by allowing an employer to discharge an individual called to jury service simply because it may be economically attractive for the employer to do so. The courts must be empowered not only to punish, but to remedy such public policy violations." *Greeley* v. *Miami Valley Maintenance Contrs., Inc., supra,* at 232, 551 N.E. 2d at 985.

From the reasoning set forth above, the Supreme Court concluded:

"Therefore, we hold that public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined *for a reason* which is prohibited by statute." (Emphasis added.) *Id.* at 234, 551 N.E. 2d at 986.

The public policy at issue here is simply whether the efficacy of R.C. 2313.18 (and the corresponding administration of justice) may be undermined where an employee is called to jury duty, but as the result of an employer's ultimatum or intimidation, fails to respond for fear of losing his employment. The Supreme Court has clearly indicated that the purpose of R.C. 2313.18 may not be frustrated by placing an employee in the untenable position of choosing between his employment and mandated duty under the statute:

"The question thus arises, must a person called to execute the mandated duties of a citizen choose between the possible termination of employment on the one hand, or be punished for failure to execute that mandated civil obligation on the other hand? The question would seem to answer itself. * * *" *Id.* at 232, 551 N.E. 2d at 985.

With regard to Mary's cause of action in the case before us then, the specific question becomes whether "a person called to execute the mandated duties of a citizen [must] choose between the possible termination of [a relative's] employment on the one hand, or be punished for failure to execute that mandated civil obligation on the other hand? * * *" *Id.* We believe this question would also seem to answer itself.

Clearly, under the *Greeley* decision, it is now an impermissible and actionable violation of public policy for an employer to discharge or threaten to discharge an employee who is called to jury duty under the circumstances outlined in R.C. 2313.18. We cannot believe that it is permissible under *Greeley* for the same employer under the same circumstances to discharge or threaten to discharge a relative of that employee instead.

We fail to see that forcing an employee called to jury duty to choose between the retaliatory loss of a relative's employment and the mandates of R.C. 2313.18 would be any less coercive or constitute any less of an attempt to frustrate the purposes of the statute than where action is taken directly against the employee. On the contrary, it could easily be argued that for an employer to "vicariously" discipline an employee who was not absent from work on behalf of the employee who left work to serve would in many ways be a more insidious undermining of the purposes of R.C. 2313.18 and would certainly create numerous other issues.

In short, we believe that the discharge of Mary simply because she was Marilyn's mother and in retaliation for Marilyn's jury duty would clearly be a discharge "* * * for a reason which is prohibited by statute" within the express holding of the first paragraph of the syllabus in *Greeley*.

Even if Mary were deemed to fall outside the protection of the statute because she was not the one called to jury duty, such a retaliatory discharge would, in our view, surely constitute a

public policy exception "of equally serious import as the violation of a statute" and thus be actionable under *Greeley* in any event. *Id.* at 235, 551 N.E. 2d at 987.

Based on the foregoing, we believe there is a cause of action stated by both Marilyn and Mary which should proceed to the trier of fact. Appellants' first assignment of error is sustained.

Appellants' second assignment of error asserts generally that:

"The trial court erred in granting the defendant[s]-appellees' motion for summary judgment."

Appellants' argument points out that the application of the trial court's judgment applies equally to the claims of the complaint against the corporate and individual appellees.

We sustain appellants' assignment of error. When a corporate officer commits a tort while in the performance of his duties, he is individually liable for the wrongful act. See *Young v. Featherstone Motors, Inc.* (1954), 97 Ohio App. 158, 171, 55 O.O. 405, 411, 124 N.E. 2d 158, 166.

For the reasons stated above and upon the authorities cited and discussed, the judgment of the Court of Common Pleas of Defiance County is reversed and the cause is remanded to that court for further proceedings.

*Judgment reversed and cause remanded.*

EVANS, J., concurs.

BRYANT, J., concurs in part and dissents in part.

BRYANT, J., concurring in part and dissenting in part. I concur with the majority in the retroactive application of *Greeley* and the resulting reversal of the trial court's summary judgment against Marilyn Shaffer. I, however, would overrule appellants' assign-ments of error as they pertain to Mary Carothers. The "employment-at-will" doctrine still applies in the absence of a contract, statutory exception, or judicial determination of statutory intent. I can find no derivative policy in the statutory intent of R.C. 2313.18 protecting the relative of a prospective juror from discharge in consequence of the juror's civic service. I believe the majority has erroneously enlarged the holding in *Greeley* to encompass a factual situation not contemplated by the Supreme Court in that opinion. I believe the majority holding in this case unnecessarily dismantles the common-law "employment-at-will" doctrine far beyond what the parameters of "judicial determination of statutory intent" and "equally serious import as the violation of a statute" adopted in *Greeley* were intended to protect.