GANSON, Appellant,

v.

VAUGHN, d.b.a. Allusions, Appellee.

[Cite as *Ganson v. Vaughn* (1999), 135 Ohio App.3d 689.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980929.

Decided Nov. 19, 1999.

*John Mulvey,* for appellant.

*John D. McClure,* for appellee.

Hildebrandt, Presiding Judge.

Plaintiff-appellant, Ellen Ganson, appeals from the judgment of the trial court finding in favor of defendant-appellee, Kimberly Vaughn, on Ganson's claims of breach of contract and violations of Ohio's Uniform Commercial Code and Consumer Sales Practices Act, R.C. Chapter 1345. The case was tried before a magistrate, who found in favor of Vaughn, and the trial court adopted the findings of the magistrate over Ganson's objections.

Ganson contracted to buy from Vaughn two cranial prostheses, which are replacement hairpieces similar to wigs. Ganson had been diagnosed with breast cancer and knew that the treatments for her cancer would cause her to lose her hair. Thus, she contacted Vaughn before the treatments so that Vaughn could have the prostheses ready when Ganson lost her hair. The prostheses were alleged to be superior to "off-the-rack" wigs because each would be custom-fit to the client's head and would duplicate the client's hairstyle.

Ganson gave Vaughn a $200 deposit on the items and paid the remainder of the cost, approximately $1,200, at a later date. The contract for the purchase of the prostheses stated that because each prosthesis was custom-fit to the client's head, no refunds could be given.

When the prostheses were ready, Ganson visited Vaughn for a fitting. Because Ganson had not lost all of her hair by that time, Vaughn told Ganson that future fittings would be necessary. However, Ganson never returned to Vaughn for further fittings.

According to Ganson, the prostheses were useless to her because they did not fit properly and were poorly constructed. Ganson's scalp showed through the prostheses in some places, and the hair was not evenly woven across the scalp cap. However, Ganson did not return the prostheses to Vaughn for fitting or further work. Instead, she took her prostheses to her regular hair stylist, who attempted to trim the hairpieces. The result was that the pieces were in worse condition than they were when Ganson received them from Vaughn.

Ganson, who was ill from treatment, instructed her sister to return the hairpieces to Vaughn and obtain a refund. When Vaughn spoke to the sister, she informed the sister that the pieces simply needed further adjustment, as Ganson had been told when she picked up the prostheses, and that, as the contract stated, no refunds were to be given due to the custom nature of the pieces. Vaughn requested that Ganson return to the store with the prostheses for further fitting. Ganson never returned, but instead sued Vaughn, as stated above, for breach of contract, and for violations of Ohio's Uniform Commercial Code ("UCC") and Consumer Sales Practices Act ("CSPA").

Following the hearing before the magistrate, the magistrate recommended a judgment in favor of Vaughn. Specifically, the magistrate found no breach of contract and no violation of the UCC because Ganson knew that proper fitting of the prostheses could take more than one visit to Vaughn, but Ganson never returned to Vaughn for fittings after the initial one, which was conducted while Ganson still had her natural hair. The magistrate also found that Vaughn had not engaged in any deceptive practices in violation of the CSPA. The trial court adopted the findings of fact and conclusions of law of the magistrate, over the objections of Ganson.

In her first assignment of error, Ganson claims that the trial court erred in adopting the holding of the magistrate that Ohio Adm.Code 109:4–3–07, relating to deposits, does not apply to a completed transaction, but applies only when a customer seeks return of the deposit and termination of the transaction. Ohio Adm.Code 109:4–3–07 states, "It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to accept a deposit unless" certain conditions are met. Among other requirements, the supplier must provide the customer with a dated receipt for the deposit that describes the goods and states the cash selling price and whether the deposit is refundable.

There is no dispute in this case that no such receipt was provided to Ganson when she paid her deposit to Vaughn. The trial court held that no violation of the CSPA had occurred because the Administrative Code provision does not apply to completed transactions.

We are constrained to hold that the trial court erred in its interpretation of the Administrative Code provision. The CSPA is a remedial Act, and its terms are to be interpreted liberally in favor of the consumer.[1] As stated in *Renner v. Procter & Gamble Co.*:[2]

"These substantive rules are liberally construed and applied to promote their purposes and policies, with such purposes and policies being to: (a) define with reasonable specificity acts and practices which violate R.C. 1345.02 or 1345.03; (b) protect consumers from suppliers who engage in referral selling, commit deceptive acts or practices, or commit unconscionable acts or practices; and (c) encourage the development of fair consumer sales practices. Ohio Adm.Code 109:4–3–01(A)."

The plain language of Ohio Adm.Code 109:4–3–07 states that it is "a deceptive act or practice in connection with a consumer transaction for a supplier *to accept a deposit*" (emphasis added) unless the supplier provides a written receipt

---

1. See *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933, 935; *Estep v. Johnson* (1998), 123 Ohio App.3d 307, 319, 704 N.E.2d 58, 66.

2. (1988), 54 Ohio App.3d 79, 86, 561 N.E.2d 959, 966.

stating the supplier's refund policy. It is the act of accepting the deposit that is prohibited under the Code unless all of the proper information is provided.

■ Other courts addressing this question have also held that, even in cases where the contemplated transaction is complete, consumers are permitted to allege and recover for a violation of the code's requirements regarding deposits.[3] A failure to comply with the requirements is a deceptive or unfair act, and further dealings between the parties do not negate the violation.[4]

The evidence in this case showed that Vaughn had a sign on the wall of her business that stated the store's refund policy, and the policy was also contained in a second written agreement signed by Ganson some time after the initial deposit was made. However, the Administrative Code specifically states that the receipt for the deposit must contain the information pertaining to refund policy. In *Zimmerman v. U.S. Diamond & Gold, Inc.,*[5] the court concluded that a sign on the wall of the business stating the store's refund policy did not satisfy the terms of the Administrative Code. The language of the Administrative Code mandates the result reached by the court in *Zimmerman,* and we likewise hold in this case that neither the store sign nor the later contract negated the violation of the Administrative Code, which occurred upon the acceptance of the deposit without a receipt meeting the requirements of the Code. Thus, we sustain Ganson's first assignment of error.

■ In her second assignment of error, Ganson claims that the trial court erred in adopting the holding of the magistrate that Vaughn's failure to report her use of a fictitious business name with Ohio's Secretary of State was not a violation of the CSPA and did not entitle Ganson to relief. R.C. 1329.01 is part of Ohio's Uniform Commercial Code, and it defines a fictitious name as one that has not been registered or cannot be registered with the Secretary of State as a trade name. R.C. 1329.01(D) requires that fictitious names be reported to the Secretary of State. R.C. 1329.10(B) prevents a person from commencing or maintaining an action in a fictitious name until the person has either reported the use of the fictitious name or registered the name as a trade name with the Secretary of State.[6]

---

3. See *Meade v. Nelson Auto Group* (Mar. 31, 1997), Union App. No. 14–96–45, unreported, 1997 WL 208685; *Layne v. McGowen* (May 24, 1995), Montgomery App. No. 14676, unreported, 1995 WL 316233; *Hahn v. Doe* (Mar. 23, 1995), Franklin App. No. 94APE07–1024, unreported, 1995 WL 127863.

4. See *id.*

5. (Mar. 8, 1995), Montgomery App. No 14680, unreported, 1995 WL 100820.

6. *Buckeye Foods v. Cuyahoga Cty. Bd. of Revision* (1997), 78 Ohio St.3d 459, 461, 678 N.E.2d 917, 919.

R.C. Chapter 1345 contains the Consumer Sales Practices Act. R.C. 1345.02 prohibits a supplier from engaging in any act that is unfair or deceptive during any portion of a consumer transaction, and that section also defines the acts that are considered unfair or deceptive. Likewise, R.C. 1345.03 defines unconscionable acts that are prohibited. R.C. 1345.05 gives Ohio's Attorney General the responsibility and authority to adopt regulations to define unfair or deceptive acts that violate R.C. Chapter 1345. Ohio Adm.Code Chapter 109:4–3 specifies those acts determined by the Attorney General of Ohio to be unfair or deceptive acts. The failure to report a fictitious name to the Secretary of State is not among the violations listed in R.C. 1345.02, 1345.03, and 1345.05, or in Ohio Adm.Code Chapter 109:4–3.

In *Crull v. Maple Park Body Shop*,[7] the court specifically held that the mere failure to report the use of a fictitious name pursuant to R.C. 1329.01 is not an unfair or deceptive act or practice in violation of the CSPA. The court reasoned that in some cases, such as when a business uses numerous fictitious names in a concerted effort to avoid its responsibilities to consumers, the failure to report the use of a fictitious name may be some evidence, when combined with other factors, of a deceptive or unfair consumer practice.[8] However, the sole failure to report the use of the fictitious name does not provide the consumer with an individual cause of action.[9] Moreover, R.C. 1329.10 states that the Attorney General, upon the request of the Secretary of State, may bring an action against an entity that fails or refuses to comply with the reporting requirements of R.C. Chapter 1329. The Act does not provide a private cause of action.

■ We find the reasoning of the *Crull* court to be persuasive. Here, the fictitious name used by Vaughn did not create a subterfuge preventing Ganson from attempting to obtain redress for alleged violations of the CSPA, and Ganson has failed to demonstrate that she was damaged or prejudiced in any way by Vaughn's failure to report the use of the fictitious name to the Secretary of State. Where the failure to report is not listed in either R.C. Chapter 1345 or Ohio Adm.Code Chapter 109:4–3 as an unfair or deceptive act, and where no other deceptive acts are alleged in connection with the use of a fictitious business name, the mere failure to register does not violate the CSPA. Thus, we hold that the trial court did not err in ruling that Vaughn's failure to report the use of a fictitious name to Ohio's Secretary of State was not a deceptive practice for which Ganson was entitled to recover.

---

7. (1987), 36 Ohio App.3d 153, 155, 521 N.E.2d 1099, 1102.

8. See *id.*

9. See *id.*, 36 Ohio App.3d at 156, 521 N.E.2d at 1102.

In her third assignment of error, Ganson argues that the trial court erred in adopting the magistrate's finding that Ganson was not entitled to attorney fees. R.C. 1345.09 authorizes the award of attorney fees to a plaintiff who prevails in a CSPA action and proves that the supplier acted intentionally. Because the trial court had determined that Ganson had not proven a violation of the CSPA, it did not consider an award of attorney fees. We have held, however, that Vaughn's failure to issue a receipt for Ganson's deposit in compliance with Ohio Adm.Code 109:4–3–07 may be considered a deceptive act in violation of the CSPA. Thus, the trial court must revisit the issue of Ganson's entitlement to attorney fees.

Therefore, the judgment of the trial court is reversed with respect to its holding that the failure to provide a receipt in accordance with Ohio Adm.Code 109:4–3–07 was legally insufficient to prove a CSPA claim, and with respect to its rejection of Ganson's demand for attorney fees. In all other respects, the judgment is affirmed. This cause is remanded for further proceedings in accordance with the law.

*Judgment accordingly.*

GORMAN and PAINTER, JJ., concur.