CHARVAT, Appellant,

v.

FARMERS INSURANCE COLUMBUS, INC. et al., Appellees.

[Cite as *Charvat v. Farmers Ins. Columbus, Inc.*, 178 Ohio App.3d 118, 2008-Ohio-4353.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–1078.

Decided Aug. 26, 2008.

Ferron & Associates, L.P.A., John W. Ferron, Jessica G. Fallon, and Lisa A. Wafer, for appellant.

Kegler, Brown, Hill & Ritter, Melvin D. Weinstein, and Loriann E. Fuhrer, for appellee Farmers Insurance of Columbus, Inc.

Isaac, Brant, Ledman & Teetor, L.L.P., J. Stephen Teetor, and Scyld D. Anderson, for appellees Lonnie Perlman and Lonnie Perlman Insurance Agency, Inc.

BROWN, Judge.

{¶ 1} Philip J. Charvat, plaintiff-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court granted summary judgment to Farmers Insurance Columbus, Inc. (individually, "Farmers"); Lonnie Perlman Insurance Agency, Inc. (individually, "Perlman Agency"), and Lonnie Perlman (individually, "Perlman"), defendants-appellees.

{¶ 2} Perlman is the sole shareholder of and sales agent for Perlman Agency. Perlman sells insurance products offered by Farmers. In early 2005, Perlman consulted with Farmers in an effort to increase his sales. Farmers suggested he contact "Take the Lead," a telemarketing company promoted by Farmers on Farmers' website that provides sales leads. Perlman contacted Take the Lead and ordered leads from its service. Appellant's name was one of the leads received by Perlman. As part of its services, Take the Lead provided an introductory letter and phone call to prospective insurance customers.

{¶ 3} On April 21, 2005, Take the Lead placed an introductory telemarketing call to appellant's residence for the purpose of selling Farmers insurance ("first call"), during which appellant requested that his telephone number be placed on its do-not-call list and that he be sent a copy of its do-not-call maintenance policy.

{¶ 4} After the initial call, Take the Lead forwarded appellant's name and telephone number to Perlman, although Take the Lead did not inform Perlman that appellant had requested to be put on the do-not-call list. On June 27, 2005, Perlman's employee called appellant's residence ("second call"). On July 13, 2005, Perlman's employee called appellant's residence again ("third call"). On July 18, 2005, Perlman's employee called appellant's residence again ("fourth call").

{¶ 5} On September 18, 2006, appellant filed a complaint, asserting in 43 separate causes of action that the calls violated the Telephone Consumer Protec-

tion Act of 1991, Section 227, Title 47, U.S.Code et seq. ("TCPA"); the Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq. ("CSPA"); and Ohio's consumer advertising regulations.

{¶ 6} On June 25, 2007, Farmers filed a motion for summary judgment, arguing that it was not liable for any calls made to appellant and that even if it were liable, appellant was limited to only one claim per call. Also on June 25, 2007, Perlman and Perlman Agency filed a motion for summary judgment, arguing that Perlman was not personally liable, appellant was limited to one claim per call, Perlman and Perlman Agency were not liable for the first call, judgment should be entered against Perlman Agency for $2,100 and the case terminated, and appellant was not entitled to attorney fees.

{¶ 7} On November 15, 2007, the trial court issued a decision, which it journalized on December 4, 2007. In the decision and judgment, the trial court granted appellees' motions for summary judgment; dismissed all claims against Farmers and Perlman; ordered an award of $2,100 to appellant; and denied appellant's request for attorney fees. Specifically, the court found that Perlman and Farmers were not liable for any of the claims related to any of the four calls; no appellees were liable for any claims related to the first call; appellant could recover from Perlman Agency for violations of the TCPA and CSPA for only the second, third, and fourth calls; appellant could not recover treble damages against Perlman Agency because its violations of the TCPA were not knowing or willful; and appellant could not recover attorney fees pursuant to the CSPA. Appellant appeals the judgment of the trial court, asserting the following assignments of error:

[I.] The trial court erred in dismissing appellant's claims against appellee Farmers Insurance of Columbus, Inc., because the calls were made to appellant for the benefit of, at the expense of, by an agent of, and at the direction of, appellee Farmers Insurance of Columbus, Inc.

[II.] The trial court erred in dismissing appellant's claims against appellee Lonnie Perlman because he personally authorized the unlawful telemarketing activities conducted by his own insurance agency.

[III.] The trial court erred in granting summary judgment in favor of appellees as to appellant's ninth, seventeenth, thirtieth and forty-third causes of action because it is undisputed that appellees failed to state, at the beginning of each of their four telephone calls to appellant, that the purpose of the call was to make a sale, as is required by O.A.C. 109:4–3–11(A)(1).

[IV.] The trial court erred in granting summary judgment in favor of appellees as to appellant's tenth cause of action because it is undisputed that, in making their first call to appellant, appellees used a fictitious name that had

not been registered with the Ohio Secretary of state, which constitutes an unfair or deceptive practice in violation of R.C. 1345.02(A) and R.C. 1329.01. [V.] The trial court erred in denying plaintiff's claim for treble damages by applying the wrong definition of "willful" and "knowing" to appellees' conduct.

{¶ 8} In his first assignment of error, appellant argues that the trial court erred when it dismissed his claims against Farmers because the calls were made to appellant for the benefit of, at the expense of, by an agent of, and at the direction of Farmers. When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate. *Franks v. Lima News* (1996), 109 Ohio App.3d 408, 672 N.E.2d 245. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. *Franks,* 109 Ohio App.3d 408, 672 N.E.2d 245.

{¶ 9} Appellant argues that the trial court erred when it granted Farmers' motion for summary judgment based upon a finding that the phone calls were not placed "on behalf of" Farmers. In support, appellant cites several sections from the TCPA and federal regulations. Section 227(c)(5), Title 47, U.S.Code provides:

(5) Private right of action

A person who has received more than one telephone call within any 12–month period by or *on behalf of the same entity* in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

(Emphasis added.) Section 64.1200(d)(3) and (5), Title 47, C.F.R. provides:

(d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

\* \* \*

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or *on whose behalf such a call is made*) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or *on whose behalf such calls are made*) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. \* \* \*

\* \* \*

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or *on whose behalf a call is made*), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(Emphasis added.)

{¶ 10} Appellant asserts that the above language contemplates the liability of the organization on whose "behalf" telemarketing calls are made. While it is undisputable that the provisions above provide for liability of an entity on whose behalf telemarketing calls are made, we conclude that Farmers cannot be subject to liability pursuant to these provisions. Although there is no recording of the second call, appellant recorded the first, third, and fourth calls. The following conversation transpired between appellant and a representative from Take the Lead during the first call:

Resident: Hello.

Sales agent: Is Philip available?

Resident: This is him.

Sales agent: Hi. My name is Greg. I'm calling with Farmer's [sic] Insurance. How are you today, sir?

Resident: Pretty good.

Sales agent: The reason for my call is a Farmer's [sic] agent in your area would just like to provide you with a free quote on your homeowner's and auto insurance. And I was just wondering when's a good time to have him call back?

Resident: You said Farmer's [sic] Insurance?

Sales agent: Yes, sir.

Resident: Is that a local outfit? A local agency?

Sales agent: Yes. We have an agent in Columbus.

Resident: Who would he be, please?

Sales agent: His name is Lonnie Perlman.

Resident: Perlman. Do you have a phone number or address for him please?

Sales agent: No. Sorry about that, sir.

Resident: No phone number or address?

Sales agent: No, sir. I have the Farmer's [sic] customer help line.

Resident: Okay, I'll take that.

Sales agent: Okay. If I could just get your information, sir, I could just have one give you a call back.

Resident: Well, first I'd like to know who I'm talking to, so please give me the phone number, okay?

Sales agent: Okay. It's 1–866–852–1429.

Resident: 1429. And by any chance do you know if you called my house in the last couple of days or so?

Sales agent: No, sir.

Resident: Okay. All right. Well, for Farmer's [sic] Insurance and Lonnie Perlman and all other agents and associates of Farmer's [sic] [I]nsurance, I'd like you to put both of my numbers on your Do Not Call list.

Sales agent: Okay, thank you.

Resident: Whoa, no, no, stay on the line. You have 895–1351 [as] one of the phone numbers. That's the one you call in on. The other one is 614–895–8940.

Sales agent: Okay. Well, I can only put this one on the Do Not Call list.

Resident: Okay, well write down on a little piece of paper 614–895–8940 and hand it to a supervisor and have them take care of it. And I also want you to send out a copy of your Do Not Call Maintenance Policy. Do you know what that is?

Sales agent: No, sir.

Resident: Well, you should, so I want you to contact a supervisor. Tell them they're supposed to send one of their Do Not Call Maintenance Policies to me. My address, do you have that?

Sales agent: No, sir.

Resident: 636 Colony Drive.

Sales agent: Okay.

Resident: Westerville, Ohio 43081.

Sales agent: Okay.

Resident: And make sure you get that done. Is there any reason why you can't?

Resident: Hello? Greg, are you still there?

Resident: A little click indicates that Greg has hung up on me. Good day.

The conversation between appellant's daughter and an employee of Perlman Agency during the second call was not recorded, and there is no admissible evidence to indicate what was said during this telephone call, except that appellant was not available to take the telephone call. The following conversation took place between appellant's daughter and an employee of Perlman Agency during the third call:

Resident: Hello.

Sales agent: May I speak with Philip?

Resident: He's not available at the moment, may I take a message?

Sales agent: No. Do you just know when would be a good time to get ahold of him?

Resident: Probably in like a half an hour.

Sales agent: Half an hour? That would be great, thank you.

Resident: All right.

Sales agent: Bye-bye.

The following conversation took place between appellant's daughter and an employee of Perlman Agency during the fourth call:

Resident: Hello.

Sales agent: May I speak with Philip?

Resident: He's not available at the moment, may I take a message?

Sales agent: Do you know when would be a good time to reach him?

Resident: Around like 5:30. Do you have a number where he could call you back at?

Sales agent: I can just give him a call back.

Resident: Oh, okay.

Sales agent: Bye-bye.

Resident: Bye.

{¶ 11} There is no dispute that none of the four calls were made directly by Farmers. The first call was made by Take the Lead, and the subsequent three calls were made by Perlman Agency employees. Thus, the only liability for Farmers under the TCPA would be if the calls were made "on behalf of" Farmers. Neither Section 227, Title 47, U.S.Code nor Section 64.1200, Title 47, C.F.R. provide any definition of "on behalf of" and "on whose behalf," and we

have been unable to find any authority in either this jurisdiction or any other that provides a precise definition of those terms. Webster's dictionary defines "on behalf of" as "in the interest of: as a representative of." Webster's Ninth New Collegiate Dictionary (1987) 141. This definition adds little clarity to our concern, as it does not tell us how broadly to interpret the "interests" represented by the person or entity conducting the telemarketing.

{¶ 12} Where a word has a technical definition differing from its dictionary definition, it must be construed according to the former. *Youngstown Sheet & Tube Co. v. Lindley* (1978), 56 Ohio St.2d 303, 309, 10 O.O.3d 423, 383 N.E.2d 903. If terms have acquired a particular or specialized meaning, either by way of legislative definition or by judicial construction, that meaning is to be ascribed to such terms. *John Ken Alzheimer's Ctr. v. Ohio Cert. of Need Rev. Bd.* (1989), 65 Ohio App.3d 134, 138, 583 N.E.2d 337. Here, the parties have submitted no authority to support any technical definition or specialized meaning of "on behalf of" or "on whose behalf." Further, although the circumstances of an enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect, *Watt v. Alaska* (1981), 451 U.S. 259, 265–266, 101 S.Ct. 1673, 68 L.Ed.2d 80, we are presented with no such argument here.

{¶ 13} This court's primary duty is to determine the intent of the legislature. *Dreger v. Public Emps. Retirement Sys.* (1987), 34 Ohio St.3d 17, 20, 516 N.E.2d 214. To that end, our interpretation starts and ends with the words chosen by the legislature, but is not limited to the words alone, because the entire context of the enactment must be considered. *State v. Cravens* (1988), 42 Ohio App.3d 69, 536 N.E.2d 686. Undoubtedly, Congress passed the TCPA "[i]n response to the burgeoning use of telephone solicitations to market goods and services in the United States, and the concomitant frustration of the American public." *Charvat v. Dispatch Consumer Serv., Inc.*, 95 Ohio St.3d 505, 2002-Ohio-2838, 769 N.E.2d 829, at ¶ 18. Congress has noted that many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers. Id., citing 137 Cong.Rec. 518781–02; 137 Cong.Rec. H11307–01. The TCPA was the result of Congress's effort to balance individual privacy with freedom of speech and trade. Id.

{¶ 14} To begin, appellant alleges in his brief that the telemarketers mentioned Farmers in all of the phone calls. As can be seen from the above quotes, this is not true. The evidence establishes that only the first telephone conversation includes any mention of Farmers. Furthermore, despite appellant's claim that he established that Perlman and Perlman Agency had placed the four calls on behalf of Farmers, there is no evidence that Perlman Agency made the second, third, and fourth calls on behalf of Farmers. In his deposition, Perlman testified

several times that the four calls at issue were placed on behalf of Perlman Agency. Appellant points to no explicit evidence in the record indicating that Perlman made the calls "on behalf of" Farmers.

{¶ 15} The record is also devoid of evidence that the second, third, and fourth calls were made to sell Farmers Insurance. There was no mention of Farmers in those calls. Notwithstanding, appellant maintains that they were clearly made on behalf of Farmers because Perlman was a "captive agent" of Farmers, which appellant defines to mean that Perlman could sell only Farmers' products. Because he could sell only Farmers' products, appellant reasons, the calls must have been made to generate sales for both Perlman and Farmers. The trial court disagreed with appellant's contention, finding that the Perlman Agency also sells insurance for many other insurance companies. We agree. Steve Andersen, the Ohio State Executive Director for Farmers averred that paragraph B.1 of the agent appointment agreement between Perlman and Farmers and the corporate agent appointment agreement between Perlman Agency and Farmers both indicate that Perlman and his agency were required to write business with Farmers only for the classes of lines of insurance underwritten by Farmers and for business that is eligible for Farmers Insurance. Thus, Andersen averred, Perlman and Perlman Agency may write insurance business with other companies when that insurance is not offered by Farmers or is not eligible to be written with Farmers. Furthermore, Andersen averred that paragraph J of the agent appointment agreement and paragraph K of the corporate agent appointment agreement indicated that Perlman and his agency were independent contractors, and the persons he and the agency chose to solicit for business, as well as the methods of solicitation, were subject to Perlman's and his agency's sole discretion. Perlman also testified in his deposition that, although Farmers gave incentives and credits to use the Take the Lead program, Farmers is generally "neutral" with respect to whether agents engage in telemarketing. Thus, this evidence supports a finding that Perlman can sell insurance underwritten by other companies besides Farmers.

{¶ 16} It is true that Perlman testified that he was a "captive" agent with Farmers, but Perlman never defined the term, and he was never asked how he defined the term. In another case involving Farmers, "captive agent" was defined similarly to the way Andersen defined it. In *Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos.* (1995), 102 Ohio App.3d 708, 711, 657 N.E.2d 851, the court defined "captive agent" as meaning the agent cannot submit insurance applications to other brokers or carriers unless permitted to do so by Farmers. Thus, because Perlman, in the present case, was permitted to sell insurance for other companies under certain circumstances, appellant's contention that Perlman was allowed to sell insurance only for Farmers was not correct.

Without evidence as to why Perlman made the second, third, and fourth telephone calls, only speculation remains.

{¶ 17} Therefore, the only telephone call that mentioned Farmers was the first call. However, we also cannot find that this call was made "on behalf of" Farmers. Initially, we note that there exists no evidence that "Greg," who presumably worked for Take the Lead, was authorized to act on behalf of or to represent Farmers. Indeed, Perlman testified that it was he who contacted Take the Lead and paid Take the Lead to commence a telemarketing campaign on behalf of Perlman Agency. Although Farmers referred agents to Take the Lead, there was no evidence presented that Farmers gave any authority to Take the Lead to act on its behalf or pursue business in its name. Furthermore, as the trial court found, even if the first call was made on behalf of Farmers, this court has held that the intent of Section 227(c)(5), Title 47, U.S.Code is not to create liability beginning with the first call, and a plaintiff is not entitled to damages for violations prior to the second call. See *Charvat v. ATW, Inc.* (1998), 127 Ohio App.3d 288, 712 N.E.2d 805. In addition, appellant does not contest the trial court's finding that appellant was relying upon Greg's statement, that he was "calling with Farmer's [sic] Insurance," to prove the truth of the statement, which renders it inadmissible hearsay pursuant to Evid.R. 801(C). Hearsay statements, unless an exception to the hearsay rule, are not admissible evidence in a summary judgment context. *Paulino v. McCary*, Franklin App. No. 04AP–1186, 2005-Ohio-5920, 2005 WL 2981298, at ¶ 6, fn. 1. For the above reasons, we hold that appellant failed to present any genuine issue of material fact as to whether any of the phone calls were made on behalf of Farmers. Therefore, the trial court did not err when it dismissed appellant's TCPA claims against Farmers.

{¶ 18} Appellant also claims that Farmers should likewise be liable under the CSPA for the first call. The CSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(A). Appellant claims that Farmers was a "supplier" under the CSPA, which is defined as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." R.C. 1345.01(C). We disagree. Although Farmers may be considered a supplier for purposes of some consumer transactions, Farmers did not effect or solicit the consumer transaction in the present case. As explained above, the sales call was solicited by Take the Lead and was effected and prompted by Perlman Agency. No doubt Farmers could have obtained a financial benefit from any sales resulting from the first call, but that benefit is too far removed here from the actual solicitation by Take the Lead. Similarly, if Farmers, instead of Perlman Agency, had hired and then directed Take the Lead to make the first call,

Farmers' actions would have been more directly responsible for "effecting" the consumer transaction. Having only a possible indirect benefit resulting from Perlman Agency's acts, Farmers cannot be liable for the first call under the CSPA. Accordingly, appellant's first assignment of error is overruled.

{¶ 19} Appellant argues in his second assignment of error that the trial court erred when it dismissed appellant's claims against Perlman because Perlman personally authorized the unlawful telemarketing activities conducted by his own insurance agency. Specifically, appellant contends that the trial court's conclusion, that appellant must pierce the corporate veil in order to hold Perlman personally liable because Perlman did not deceive or intend to deceive anyone, disregarded both the CSPA and the closely held nature of Perlman's business. Appellant asserts that Perlman was directly involved in the telemarketing calls, and he is the sole shareholder of the Perlman Agency.

{¶ 20} The purpose of the CSPA is to protect consumers from the harm of deceptive or unconscionable sales practices. *Roelle v. Orkin Exterminating Co.* (Nov. 7, 2000), Franklin App. No. 00AP–14, 2000 WL 1664865. The statute is intended to give protection to consumers from unscrupulous suppliers of goods or services in a more efficient, expedient, and affordable manner than would be available in a common law tort or contract action. *State ex rel. Celebrezze v. Howard* (1991), 77 Ohio App.3d 387, 393, 602 N.E.2d 665. The CSPA has a remedial purpose and must accordingly be liberally construed in favor of consumers. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933.

{¶ 21} However, a corporation is a distinct legal entity, separate and apart from the natural individuals who formed it and own it. *Janos v. Murduck* (1996), 109 Ohio App.3d 583, 587, 672 N.E.2d 1021. Therefore, shareholders, officers, and directors will generally not be held personally liable for the acts of a corporation. *Lewis v. DR Sawmill Sales, Inc.*, Franklin App. No. 04AP–1096, 2006-Ohio-1297, 2006 WL 701140, at ¶ 27. In *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075, the Ohio Supreme Court recognized a limited exception to this rule. The court therein held that the corporate veil could be pierced to allow creditors to personally reach shareholders who had used the corporation for criminal or fraudulent purposes.

{¶ 22} The court in *Belvedere* found that the corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation had no separate mind, will, or existence of its own; (2) control over the corporation by those to be held liable was exercised in

such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. Id., paragraph three of the syllabus. The burden of proving that the corporate veil should be pierced lies with the party seeking to hold the individual shareholder or shareholders liable. *Zimmerman v. Eagle Mtge. Corp.* (1996), 110 Ohio App.3d 762, 772, 675 N.E.2d 480.

{¶ 23} In the present case, appellant concedes that he is not seeking liability on behalf of Perlman personally based upon the theory of piercing the corporate veil, and he presents no argument regarding that theory. Rather, as mentioned, appellant maintains that Perlman should be personally liable because of his "direct involvement" in the telemarketing calls and the closely held nature of Perlman's business, with Perlman being the sole shareholder of the Perlman Agency. However, as is apparent by the factors from *Belvedere* enunciated above, these are essentially factors relevant to piercing the corporate veil. Appellant presented no evidence demonstrating that Perlman exercised control over Perlman Agency so complete that the agency had no separate mind, will, or existence of its own, or that any such control was exercised in such a manner as to commit fraud or an illegal act. Thus, as any acts Perlman engaged in were in his capacity of a corporate officer for Perlman Agency, he could not be personally liable.

{¶ 24} Notwithstanding, appellant attempts to circumvent the usual legal route of piercing the corporate veil by relying upon *Shaffer v. Frontrunner, Inc.* (1990), 57 Ohio App.3d 18, 566 N.E.2d 193, for the proposition that, when a corporate officer commits a tort while in the performance of his duties, the officer is individually liable for the wrongful act. In *Shaffer*, a mother and daughter filed an action against their employer when the daughter was fired from her employment for missing work to attend jury duty and the mother was subsequently fired in retaliation for her daughter's attending jury duty. The appellate court concluded, among other things, that the individual corporate officer who fired the two could be personally liable, holding that, when a corporate officer commits a tort while in the performance of his duties, he is individually liable for the wrongful act. However, we find *Shaffer* distinguishable from the present case in one important aspect that renders it inapplicable. Here, unlike the corporate officer in *Shaffer*, Perlman did not actively participate in the wrong that resulted in liability. Although Perlman was responsible for securing the phone list from Take the Lead, he did so in the usual course of his work as an employee and had no personal involvement in any of the phone calls. None of Perlman's activities were violations of the CSPA or TCPA. The CSPA and TCPA do not impose liability for receiving a calling list that contains names and numbers of those who have indicated their desire not to be contacted or impose

liability for editing the script to be followed by the telemarketers. The violations here were the actual telephone calls made by two employees of Perlman Agency, and Perlman did not make any of the calls. Therefore, we find *Shaffer* inapplicable to the present circumstances. For the above reasons, the trial court did not err when it found that Perlman could not be personally liable. Appellant's second assignment of error is overruled.

{¶ 25} Appellant argues in his third assignment of error that the trial court erred when it granted summary judgment to appellees with regard to his ninth, 17th, 30th, and 43rd causes of action because it is undisputed that appellees failed to state, at the beginning of each of their four telephone calls, that the purpose of the call was to make a sale, as required by Ohio Adm.Code 109:4-3-11(A)(1). Appellant contends that Ohio Adm.Code 109:4-3-11 requires the caller to disclose the purpose of the call, no matter who answers the phone.

{¶ 26} We first note that under this assignment of error, appellant seeks to recover separately from the other TCPA and CSPA violations for violations under Ohio Adm.Code 109:4-3-11(A)(1). Appellant claims that he was entitled to damages for each violation of the CSPA, even if multiple violations occurred within a single call. Citing *Charvat v. Colorado Prime,* Inc. (Sept. 17, 1998), Franklin App. No. 97APG09-1277, 1998 WL 634922, the trial court found that appellant was limited under the TCPA to recovering $500 in damages for each of the three calls made after the first call, and, citing *Charvat v. Ryan,* 168 Ohio App.3d 78, 2006-Ohio-3705, 858 N.E.2d 845 (*"Charvat I "*), the trial court likewise found that appellant was limited under the CSPA to recovering a single award of damages per telephone call, even when there were multiple violations during the same call.

{¶ 27} Notwithstanding, even assuming arguendo that appellant would be permitted to recover for multiple rule violations in a single call under the CSPA, which we are not concluding herein, we find there can be no additional liability under Ohio Adm.Code 109:4-3-11 for any of the four calls in the present case. Ohio Adm.Code 109:4-3-11 provides:

(A) It shall be a deceptive act or practice in connection with a consumer transaction involving any direct solicitation sale for a supplier to do any of the following:

(1) Solicit a sale without clearly, affirmatively, and expressly revealing at the time the supplier initially contacts the consumer or prospective consumer, and before making any other statement, asking any question, or entering the residence of the consumer or prospective consumer, that the purpose of the contact is to effect a sale, stating in general terms the goods or services the supplier has to offer, provided that this paragraph shall not apply to solicitations by mail.

{¶ 28} Here, with regard to the third and fourth calls, appellant presents no authority for the proposition that the solicitor must state the reason for the call prior to asking to speak to the consumer or actually speaking to the consumer. To the contrary, as indicated above, the express language of Ohio Adm.Code 109:4–3–11(A)(1) indicates that the solicitor must state that the reason for the call is to make a sale only "at the time the supplier initially contacts the consumer or prospective consumer." In the third and fourth calls, no contact was ever made with appellant, who was the consumer that the employees of the Perlman Agency were trying to contact. Without the agency's ever having made any contact with appellant, we can find no liability under Ohio Adm.Code 109:4–3–11(A)(1). Further, although the second call was not transcribed and the record is unclear as to what transpired, assuming the second call proceeded similarly to the third and fourth calls, for the same reasons outlined above, we would find no liability under Ohio Adm.Code 109:4–3–11(A)(1).

{¶ 29} With regard to the first call, before indicating he was calling to make a sale, Greg first stated his name and that he was calling on behalf of Farmers, and asked how appellant was doing. Although Greg made these "courtesy" introductions before indicating the purpose of his call was to make a sale, as a practical matter, we cannot envision that a generic salutation or brief common pleasantry at the beginning of a phone call, before any solicitation for a sale has commenced, is the type of harm contemplated by the legislature in its passage of the CSPA. The purpose of the CSPA is to protect consumers from unfair, deceptive, and unconscionable acts and practices. *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, at ¶ 11, 13. The passing comments in the present case would not be contrary to this purpose. Furthermore, after briefly engaging in these customary rules of American telephone etiquette, Greg proceeded directly to the reason for his call. Thus, the key characteristics that we believe take these comments out of the purview of the prohibitions in Ohio Adm.Code 109:4–3–11(A)(1) are the brevity of the comments, the content of comments as containing the hallmarks of a traditional telephone greeting, the lack of solicitation of a sale and lack of any covert sales tactics during the span of the brief introduction, and the short lapse in time between the introductory comments and the identification of the call as one being for the purpose of making a sale. Accordingly, we conclude that the trial court did not err when it granted summary judgment with regard to appellant's ninth, 17th, 30th, and 43rd causes of action. Appellant's third assignment of error is overruled.

{¶ 30} Appellant's fourth assignment of error asserts that the trial court erred when it granted summary judgment to appellees as to his tenth cause of action because it is undisputed that, in making their first call to appellant, appellees used a fictitious name that had not been registered with the Ohio Secretary of

State, pursuant to R.C. 1329.01, which constitutes an unfair or deceptive practice in violation of R.C. 1345.02(A). However, appellant's actual argument under his fourth assignment of error does not address the merits of the issue. Rather, appellant's only contention is that none of the appellees mentioned the tenth cause of action in their respective motions for summary judgment, and, thus, the trial court was not permitted to render summary judgment on this issue when it was not raised in the motions for summary judgment.

{¶ 31} It is true that, when seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. If a party files a motion based on some, but not all, issues in a case, the trial court should restrict its ruling to those matters raised. *Ferro Corp. v. Blaw Knox Food & Chem. Equip. Co.* (1997), 121 Ohio App.3d 434, 700 N.E.2d 94. It is likewise true that it is reversible error to award summary judgment on grounds not specified in the motion for summary judgment. *Eller v. Continental Invest. Partnership,* 151 Ohio App.3d 729, 2003-Ohio-894, 785 N.E.2d 802, ¶ 15–16.

{¶ 32} Under the circumstances of the present case, we conclude that the trial court did not err in rendering summary judgment on appellant's tenth cause of action, given the trial court's other determinations rendered liability for any of the appellees under the theory raised in appellant's tenth cause of action moot. We first note that contrary to appellant's contention, in their motions for summary judgment, appellees did seek dismissal of appellant's tenth cause of action, although they claimed that summary judgment on this cause of action was warranted based upon the theory that appellant was limited to one measure of statutory damages per telephone call. Thus, appellant was aware that appellees were moving for summary judgment of this claim. Notwithstanding, the trial court concluded that appellant had failed to demonstrate that Greg made the first call on behalf of Farmers or as an agent of Farmers, and we concurred with this finding in overruling appellant's first assignment of error. Further, we found under appellant's second assignment of error that appellant failed to demonstrate that Perlman should be personally liable for the actions of Perlman Agency. Therefore, it follows that Perlman and Farmers cannot be liable under R.C. 1345.02(A) for Greg's use of the name "Farmers Insurance" in the first call.

{¶ 33} Having found that neither Perlman nor Farmers may be liable under this theory, we note that the only remaining defendant was Perlman Agency, and clearly Perlman Agency cannot be held liable for another company's failure to register an allegedly fictitious name. R.C. 1329.01(D) specifically indicates that its requirements apply only to the entity that does business under the fictitious name. The Perlman Agency does not do business under "Farmers

Insurance," and appellant does not allege so much. The whole of Ohio case law relating to the deceptive or unfair consumer practice of using an unregistered fictitious name involves an entity's own use of an unregistered fictitious name for its own business.

■ {¶ 34} In addition, it has been held in two reported Ohio appellate cases that an entity's use of a fictitious name may be deemed a deceptive and unfair practice only when used by the entity in connection with some effort to avoid its responsibilities to consumers. In appellant's complaint here, appellant merely alleges that a fictitious name was used in the first call. Where no other deceptive acts are alleged in connection with the use of a fictitious business name, the mere failure to register does not violate the CSPA. See *Ganson v. Vaughn* (1999), 135 Ohio App.3d 689, 694, 735 N.E.2d 483 (the mere use of a fictitious name is not an unfair or deceptive practice when the use did not create a subterfuge preventing the plaintiff from attempting to obtain redress for alleged violations of the CSPA, and the plaintiff failed to demonstrate that she was damaged or prejudiced in any way by the defendant's failure to report the use of the fictitious name to the secretary of state); *Crull v. Maple Park Body Shop* (1987), 36 Ohio App.3d 153, 521 N.E.2d 1099 (the mere failure to report the use of a fictitious name, pursuant to R.C. 1329.01, is not an unfair or deceptive act or practice in violation of the CSPA, but in some cases, such as when a business uses numerous fictitious names in a concerted effort to avoid its responsibilities to consumers, the failure to report the use of a fictitious name may be some evidence, when combined with other factors, of a deceptive or unfair consumer practice). Therefore, we find that the trial court did not err in dismissing appellant's tenth cause of action relating to Greg's use of an allegedly fictitious name in the first call. Appellant's fourth assignment of error is overruled.

■ {¶ 35} Appellant argues in his fifth assignment of error that the trial court erred when it denied his claim for treble damages by applying the wrong definition of "willful" and "knowing" to appellees' conduct. Pursuant to Section 277(b)(3), Title 47, U.S.Code, a court may, in its discretion, triple the damages awarded for a violation of the TCPA for a residential customer if the court finds that the defendant acted "willfully or knowingly." In the present case, citing *Charvat v. Colorado Prime, Inc.*, Franklin App. No. 97APG09–1277, 1998 WL 634922, the trial court found that to knowingly violate the TCPA regulations for purpose of treble damages, a defendant must do more than make a telephone call: The defendant must affirmatively know it is violating a regulation when making the telephone call. Id. Thus, in the present case, the trial court concluded that because there was no evidence that any of the calls placed by Perlman Agency were placed with knowledge that the TCPA regulations were being violated, any damages awarded under the TCPA should not be trebled.

{¶ 36} However, after the trial court rendered its decision, the Ohio Supreme Court issued *Charvat v. Ryan*, 116 Ohio St.3d 394, 2007-Ohio-6833, 879 N.E.2d 765 (*"Charvat II "*), in which the court held that to establish a knowing violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it had acted or had failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of law.  Id. at ¶ 18.  To establish a willful violation of the TCPA for an award of treble damages, a plaintiff must prove that the defendant consciously and deliberately committed or omitted an act that violated the statute, irrespective of any intent to violate the law.  Id. at ¶ 21.  Thus, in the present case, it is apparent that the trial court utilized the wrong definitions for determining whether a violation of the TCPA was knowingly or willful.

{¶ 37} However, the Supreme Court in *Charvat II* also noted that because Congress chose to employ a low threshold to assess treble damages, by requiring a caller's actions to be "knowing" or "willful," it was important to highlight the language in the second part of the provision for treble damages that the award of treble damages is subject to the court's discretion.  Id. at ¶ 22.  Thus, a two-part test is presented for the trial court to employ when ascertaining whether treble damages are appropriate in a particular case.  First, the court must decide whether a violation was "knowing" or "willful," and then the court may, but need not, award treble damages.  Id. at ¶ 23.

{¶ 38} Here, although the trial court acknowledged that its determination of treble damages was subject to the discretion of the court, it appears that its refusal to award such treble damages was based upon the improper definitions of "knowingly" and "willfully" that it employed.  Therefore, we remand the matter back for a determination of whether treble damages are warranted under the circumstances of the present case using the standards set forth in *Charvat II*.  Thus, appellant's fifth assignment of error is sustained.

{¶ 39} Accordingly, appellant's first, second, third, and fourth assignments of error are overruled;  appellant's fifth assignment of error is sustained;  the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part;  and this matter is remanded to that court for further proceedings in accordance with the law, consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

PETREE and SADLER, JJ., concur.