[Cite as *LaMusga v. Summit Square Rehab, L.L.C.*, 2017-Ohio-6907.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

JUDITH LaMUSGA, ESQUIRE      :

     :

     *Plaintiff-Appellant*      :      Appellate Case No. 27186

     :

v.      :      Trial Court Case No. 2014-CV-408

     :

SUMMIT SQUARE REHAB, LLC, et al.      :      (Civil Appeal from

     :      Common Pleas Court)

     *Defendants-Appellees*      :

     :

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of July, 2017.

. . . . . . . . . . .

SAM G. CARAS, Atty. Reg. No. 0016376, DAVID M. DEUTSCH, Atty. Reg. No. 0014397, 130 West Second Street, Suite 310, Dayton, Ohio 45402
     Attorneys for Plaintiff-Appellant

BRIAN L. WILDERMUTH, Atty. Reg. No. 0066303, LAUREN K. EPPERLEY, Atty. Reg. No. 0082924, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
     Attorneys for Defendants-Appellees

. . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Plaintiff-appellant Judith LaMusga, Esquire, as Administrator of the Estate of Dant'e Price, Deceased ("LaMusga"), appeals from a summary judgment rendered against her on her claims against defendants-appellees Ivan and Christina Burke for damages associated with the death of Price. For the reasons set forth below, we affirm.

## I.     Factual Background And Procedural History

**{¶ 2}** This case arises from the death of Dant'e Price after he was shot while on the premises of Summit Square Apartments ("Summit") in Dayton. On March 1, 2012 Price drove to Summit to visit his girlfriend and minor son. Price was attempting to park his car when he was confronted by private security guards Christopher Tarbert and Justin Wissinger. The two guards surrounded Price's vehicle with their guns raised and ordered him to exit the vehicle. Although Price offered to leave and asked the guards to lower their guns, they refused to do so. Price then stated his intent to remain in his vehicle until officers from the City of Dayton Police Department arrived. Tarbert and Wissinger continued to shout orders and point their guns at the car, and Price attempted to drive away. The guards fired their weapons at the vehicle approximately 17 times. Price was hit by at least three of the shots and subsequently died.

**{¶ 3}** Tarbert and Wissinger were employees of Ranger Security, LLC, which was owned and operated by defendants Christina and Ivan Burke. The company provided private security guards to numerous clients, including Summit. The Burkes also owned Tactical Solutions Group ("TSG"), a sole proprietorship that provided weapons training to individuals seeking to become private security officers. Ivan Burke was certified by the

Ohio Peace Officer Training Commission and The Office of The Attorney General as a School Commander and Unit Instructor in the Ohio Private Security Basic Training Program. TSG offered certification courses in semi-automatic weapons, revolvers and shotguns. Once an individual successfully completed a course, Burke sent all required paperwork to the State which would then issue certificates to the individual students.

{¶ 4} LaMusga filed a complaint against Summit, the Wallick Companies (as owner/operator of Summit), Ranger Security, LLC, Wissinger, Tarbert and the Burkes. The Complaint contained seven counts including claims for assault and battery (Count I), false imprisonment (Count II), improper hiring training, retention and supervision (Count III), intentional infliction of emotional distress (Count IV), wrongful death (Count V), punitive damages (Count VI), and vicarious and statutory liability (Count VII). Subsequently, LaMusga filed an Amended Complaint, adding Dayton Metropolitan Housing Authority dba Greater Dayton Premier Management and TSG as defendants. The Amended Complaint also added a claim that TSG should have known the guards had a reputation for violence (Count VIII), as well as a claim for intentional infliction of serious emotional distress (Count IX).

{¶ 5} The defendants filed Civ.R. 12(C) motions for judgment on the pleadings with respect to Counts I, II, and IV of the Complaint and Count IX of the Amended Complaint, based on the statute of limitations. The trial court granted the motions for dismissal and/or partial judgment on the pleadings on June 28, 2014, and ordered Counts I, II, IV, and IX dismissed with prejudice. The trial court did not include a Civ.R. 54(B) certification with its decision.

{¶ 6} Subsequently, in July 2014, LaMusga voluntarily dismissed TSG, without

prejudice. LaMusga also filed a motion asking the trial court to reconsider its decision dismissing Counts I, II, IV, and IX. The court overruled this motion on January 31, 2015, and added a Civ.R. 54(B) certification. However, a Civ.R. 58(B) notice was not issued until March 5, 2015. LaMusga appealed from the order dismissing Counts I, II, IV, and IX, and from the order overruling the motion for reconsideration. This court affirmed the trial court's decision in *LaMusga v. Summit Square Rehab, L.L.C.*, 2015-Ohio-5305, 43 N.E.3d 504 (2d Dist.). Eventually, LaMusga entered into settlement agreements and dismissed all parties except the Burkes individually.

{¶ 7} Both parties filed motions for summary judgment. In her motion, LaMusga argued that security services performed at Summit were provided by Ranger Security and Investigation rather than Ranger Security, LLC. Thus, she maintained that the Burkes, as sole proprietors of Ranger Security and Investigation, were liable for the death of Price. LaMusga further argued that the Burkes, through TSG, were liable for failing to properly train the guards.

{¶ 8} The Burkes' motion for summary judgment argued that LaMusga's claims regarding TSG constituted an educational malpractice claim which is not recognized in Ohio. They also argued that they could not be held liable through TSG as no special relationship existed between them and the guards that would result in a duty to Price. The Burkes further argued that they did not breach any duty to Price, and that they did not proximately cause Price's death. Finally, they argued that their security business was a limited liability company, not a sole proprietorship.

{¶ 9} The trial court rendered summary judgment in favor of the Burkes, and overruled LaMusga's motion for summary judgment. LaMusga appeals.

**II.	The Trial Court Did Not Err By Concluding That There Is No Genuine Issue of Material Fact Regarding the Liability of the Burkes.**

**{¶ 10}** LaMuga's first and second assignments of error state:

THE TRIAL COURT ERRED BY MAKING FACTUAL DETERMINATIONS IN FAVOR OF THE BURKES IN DEROGATION OF CIV.R.56(C) EVIDENTIARY STANDARDS OF REVIEW FOR SUMMARY JUDGMENT AND IN DEROGATION OF APPLICABLE SUBSTANTIVE LAW, AND SO GRANTED THE BURKES' MOTION FOR SUMMARY JUDGMENT.

THE TRIAL COURT ERRED BY GRANTING THE BURKES' MOTION FOR SUMMARY JUDGMENT BY FAILING TO CONSIDER THE UNCONTROVERTED FACTS, ADMISSIONS, AND APPLICABLE LAW, WHICH WARRANTED SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF-APPELLANT FOR THE BURKES' NEGLIGENT TRAINING AND SUPERVISION.

**{¶ 11}** LaMusga contends that the trial court erred by rendering summary judgment in favor of the Burkes, and by failing to grant her motion for summary judgment.[1] She argues that the trial court erred by concluding that the Burkes were not personally liable for negligent training through their sole proprietorship TSG. Second, she contends that the trial court erred by concluding that the Burkes had no personal liability in connection with Ranger Security and Investigation.

**{¶ 12}** "Summary judgment pursuant to Civ.R. 56 should be granted only if no

---

[1] Both motions for summary judgment focus on the same issues and facts. Thus, granting one motion necessarily entailed denying the other.

genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party." *Trutschel v. Kettering Med. Ctr.*, 2d Dist. Montgomery No. 22816, 2009-Ohio-3302, ¶ 9, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). "The moving party bears the initial burden of showing that no genuine issue of material fact exists for trial. The burden then shifts to the non-moving party to set forth specific facts which show that there is a genuine issue of material fact for trial." *Id.* All evidence must be construed in favor of the nonmoving party. *Id.* An appellate court reviews summary judgments de novo. *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588, 641 N.E.2d 265 (8th Dist. 1994). In other words, we review such judgments independently and without deference to the trial court's determinations. *Id.*

{¶ 13} It is a basic rule that in order to establish actionable negligence, a plaintiff must demonstrate "the existence of a duty, a breach of that duty and an injury proximately resulting therefrom." *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). Thus, to prevail on a motion for summary judgment, LaMusga must demonstrate that the Burkes owed a duty to Price, a breach of that duty, and that the breach was the proximate cause of Price's death.

{¶ 14} "The existence of a duty in a negligence action is a question of law for the court, and there is no express formula for determining whether or not a duty exists." *Adelman v. Timman*, 117 Ohio App.3d 544, 549, 690 N.E.2d 1332 (8th Dist.1997). "Ordinarily, there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special

relationship between the actor and the third person which gives rise to a duty to control, or between the actor and another which gives the other the right to protection." *Fed. Steel & Wire Corp. v. Ruhlin Const. Co.*, 45 Ohio St.3d 171, 173, 543 N.E.2d 769 (1989). "[A] 'special relation' exists when one takes charge of a person whom he knows or should know is likely to cause bodily harm to others if not controlled." *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 92, 529 N.E.2d 449 (1988), citation omitted. A special relationship has been found to exist between a business owner and invitee. *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130,135, 652 N.E.2d 702 (1995). Other "[r]elationships which result in a duty to protect others include (1) common carrier and its passengers, (2) innkeeper and guests, (3) possessor of land and invitee, (4) custodian and individual taken into custody, and (5) employer and employee." *Jackson v. Forest City Ent., Inc.*, 111 Ohio App.3d 283, 285, 675 N.E.2d 1356 (8th Dist.1996).

**{¶ 15}** Even when a special relationship exists, a defendant is not liable unless the actions of the third party were foreseeable. *Maier v. Serv-All Maintenance, Inc.*, 124 Ohio App.3d 215, 221, 705 N.E.2d 1268 (8th Dist. 1997). The test to determine foreseeability is "[w]hether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

**{¶ 16}** LaMusga contends that the Burkes, acting as sole proprietors of TSG, had a duty to prevent harm to Price because they had a special relationship with Tarbert and Wissinger. Specifically, she argues that the Burkes employed the guards through Ranger Security, LLC, and the terms of that employment required that the guards receive their training through the Burkes' sole proprietorship, TSG. Thus, she argues that there

is a nexus between the training and employment which creates a special relationship; i.e., an employment relationship. She further argues that the Burkes breached their duty to Price by negligently training the guards through TSG. Specifically, she claims that TSG improperly instructed on the use of force and on the detention of individuals.[2] She also argues that because the Burkes had knowledge of prior instances in which the guards acted improperly in discharging their duties as security guards, it was reasonably foreseeable that an individual such as Price would suffer harm.

{¶ 17} The elements necessary to establish a claim for negligent training and/or negligent supervision are: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining [or training or supervising] the employee as the proximate cause of plaintiff's injuries." *Sheldon v. Kettering Health Network*, 2015-Ohio-3268, 40 N.E.3d 661, ¶ 41 (2d Dist.), *appeal not allowed*, 144 Ohio St.3d 1477, 2016-Ohio-467, 45 N.E.3d 244 (2016), quoting *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 739, 680 N.E.2d 161 (10th Dist.1996).

{¶ 18} At issue in this case is the first element; whether the special relationship of employer-employee exists between the Burkes, operating as TSG, and the guards. The trial court found that the guards were not employed by TSG. Instead, the trial court found that the guards were employed by Ranger Security, LLC, and were engaged in that

---

[2] The Burkes argue, as a cross-assignment of error, that this amounts to an educational malpractice claim which is not recognized in Ohio. Thus, they argue that the trial court erred by finding that it did not constitute an educational malpractice action. Given our resolution of both assignments of error, we conclude that this argument is moot.

employment at the time Price was killed.  Thus, the trial court found that no special relationship existed between the Burkes, as sole proprietors of TSG, and Tarbert and Wissinger.

{¶ 19} We agree.  The record is devoid of any evidence to support a finding that Tarbert and Wissinger were employed by TSG.  Instead, the record demonstrates that TSG merely provided training to the guards.

{¶ 20} We are not completely unsympathetic to the claim that the Burkes created a nexus between the guards' employment with Ranger Security, LLC and their training with TSG as the record does support a finding that Ranger Security, LLC required its guards to train at TSG.  However, the record also supports a finding Tarbert and Wissinger did not train exclusively with TSG. The evidence also indicates that individuals other than those employed by Ranger Security, LLC took courses through TSG; and that some individuals trained by TSG worked for competitors of Ranger Security, LLC.  More significantly, we have not found, and LaMusga does not cite, any authority to support a finding that this type of link is sufficient to create an employment or other special relationship between the Burkes operating as TSG and the guards.  Thus, the Burkes, acting through TSG, had no duty to control the actions of the guards.

{¶ 21} Additionally, we cannot conclude, even assuming the existence of a special relationship, that TSG provided improper training to Tarbert and Wissinger.  Simply put, LaMusga failed to present any evidence or competent authority to support the claim that TSG should not have instructed the guards on the use of force, or on the topic of search and seizure.  Indeed, the evidence demonstrates that the curriculum set forth by the Ohio Peace Officer Training Council Private Security Training Course provides for such

instruction. Specifically, there is evidence in this record that a portion of the training course includes instruction on the use, and necessity, of force and deadly force. Further, the Peace Officer Training Commission mandates 100% attendance at all security guard courses covering the topics of search, seizure and arrest. OAC 109:2-3-07. On this record, LaMusga failed to demonstrate a question of fact regarding whether the training provided by TSG was improper. Thus, we conclude that the trial court did not err in rendering summary judgment in favor of the Burkes with regard to TSG.

{¶ 22} We next address the claim that the trial court erred by failing to hold the Burkes individually liable for their security business. This portion of LaMusga's argument first rests upon the claim that the Burkes were actually providing security guard services to Summit through a sole proprietorship known as Ranger Security and Investigation, and were thus, individually liable for the acts of the guards. LaMusga alternatively argues that even if the guards were employed by Ranger Security, LLC, rather than the sole proprietorship, there is evidence to support piercing the corporate veil of Ranger Security, LLC.

{¶ 23} We begin with LaMusga's claim that the Burkes were not operating their security guard business as a limited liability company, but rather as a sole proprietorship known as Ranger Security and Investigation. In support, she cites the fact that the service contract executed by Summit listed Ranger Security and Investigation as the provider of services. She also notes that checks for payments received from clients were made payable to Ranger Security and Investigation. Also, payments made to the guards were drawn on a checking account titled "Ivan Burke dba Ranger Security and Investigation." LaMusga further argues that because the name Ranger Security and

Investigation was not registered as a fictitious name as required by R.C. Chapter 1329, the Burkes are estopped from claiming that Ranger Security, LLC was merely doing business under the fictitious name of Ranger Security and Investigation.

{¶ 24} The trial court found that the facts cited by LaMusga were not sufficient to raise a genuine issue of material fact. We agree.

{¶ 25} The Burkes submitted affidavits in which they averred that their security guard business is named and registered as Ranger Security, but that they sometimes conducted its business under various other names.[3] The trial court noted that the record contains evidence that the Burkes purchased a company named Ranger Security, Inc., which they converted to an LLC. There is evidence that some of the forms left over from the original company used the name Ranger Security and Investigation, and that the Burkes utilized those forms from time to time. There is evidence that the Burkes also conducted some business under the names Ranger Security and Investigations, LLC, as well as Ranger Security and Investigations. There is also evidence that some of the forms utilized merely referred to the company as Ranger Security.

{¶ 26} Importantly, the record demonstrates that business licenses for the private security guard services were issued by the State to Ranger Security, LLC. State quarterly reports, as well as reports on employee rosters, were submitted under the name Ranger Security, LLC. Identification cards bearing the Ranger Security, LLC moniker were issued by the State to the guards, including Tarbert and Wissinger. The record

---

[3] LaMusga argued that the trial court should strike the affidavits because they contradict prior deposition testimony. The trial court rejected this argument, concluding that the affidavits were not inconsistent with the Burkes' depositions. We find no abuse of discretion in this regard.

demonstrates that the LLC, prior to the date of Price's death, began using a payroll company, and that the checks issued to the guards were then issued in the name of Ranger Security, LLC. Ranger Security, LLC paid for, and carried a workers' compensation policy with the State, as well as a policy of liability insurance with Great Midwest Insurance Company. Both Tarbert and Wissinger testified that they were employed by Ranger Security, LLC. LaMusga sued, and settled with, Ranger Security, LLC.

{¶ 27} The mere fact that the Burkes utilized variations on the Ranger Security, LLC name does not establish that they were acting as a sole proprietorship rather than a limited liability company. Further, the failure to register the fictitious name does not act to create a sole proprietorship in that name. R.C. 1329.01 defines "fictitious name" as "a name used in business or trade that is fictitious and that the user has not registered or is not entitled to register as a trade name * * *." Failing to register the fictitious name as required by R.C. 1329.10(B) merely prevents a person from commencing or maintaining an action under the fictitious name until the person has registered the name with the Secretary of State; it does not convert the business using the fictitious name into a sole proprietorship.

{¶ 28} At most, the evidence establishes that Ranger Security, LLC on occasion operated under a fictitious name, or variation of the corporate name, that was not registered with the State. But such operation did not turn Ranger Security, LLC into a proprietorship. Therefore, the trial court did not err in finding no genuine issue of fact on this issue.

{¶ 29} We next turn to the claim that the trial court should have pierced the

corporate veil in order to hold the Burkes liable for the conduct of Ranger Security, LLC., Tarbert and Wissinger. "A corporation is a separate legal entity from its shareholders even where there is only one shareholder in the corporation." *Zimmerman v. Eagle Mtg. Corp.*, 110 Ohio App.3d 762, 771, 675 N.E.2d 480 (2d Dist.1996). "Therefore, shareholders, officers, and directors will generally not be held personally liable for the acts of a corporation." *Charvat v. Farmers Ins. Columbus, Inc.*, 178 Ohio App.3d 118, 2008-Ohio-4353, 897 N.E.2d 167, ¶ 21 (10th Dist.). However, in certain circumstances, the corporate form may be disregarded and the corporate veil may be pierced. *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 287, 617 N.E.2d 1075 (1993), *modified by Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538. In order to reach the personal assets of the corporation's individual shareholders, the creditor must show that "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Id.* at 289, 617 N.E.2d 1075. The burden of proving these elements rested with LaMusga. *Zimmerman* at 772, 675 N.E.2d 480.

{¶ 30} In *Springfield v. Palco Invest. Co., Inc.*, 2013–Ohio–2348, 992 N.E.2d 1194 (2d Dist.), this court addressed the first prong of the *Belvedere* test:

In determining whether a corporation is an individual's alter ego, Ohio appellate courts consider various factors, such as (1) whether corporate formalities were observed, (2) whether corporate records were kept, (3) whether corporate funds

were commingled with personal funds, (4) whether corporate property was used for a personal purpose, and (5) gross undercapitalization. These factors are non-exclusive.

(Citations omitted).   *Id.* at ¶ 84.

{¶ 31} The trial court found that LaMusga had established that corporate funds were commingled with personal funds.   However, the trial court went on to find that LaMusga failed to establish any other evidence that would satisfy the first prong of *Belvedere.*   We agree.   The evidence demonstrates that the LLC filed articles of incorporation with the State, and that it maintained an agent for service of process.   The evidence further shows that Ranger Security, LLC kept records of its State licensing, employee rosters, contracts, and personnel files.   The company maintained policies of insurance for both liability and workers' compensation.   There is no evidence of gross undercapitalization.   Thus, we conclude that the trial court did not err in finding that LaMusga failed to satisfy this prong.

{¶ 32} The trial court also found that LaMusga failed to establish the second prong of the *Belvedere* test. However, as noted by LaMusga, it appears that the trial court misstated the requirements of the second prong.   Specifically, the second prong was modified by the Supreme Court of Ohio in *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, wherein the court stated, "we hold that to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act. Courts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only

in instances of extreme shareholder misconduct." *Id.* at ¶ 29.

{¶ 33} We conclude that the trial court did not err in finding no issue of genuine fact with regard to this second prong. LaMusga contends that the Burkes violated the second prong because Tarbert and Wissinger were not properly trained, and because they had previous incidents involving improper detentions and interactions with individuals for which they were not disciplined. As noted above, we found no genuine issue of fact regarding improper training. Further, we cannot say that failing to discipline an employee rises to the level of an illegal act. In short, nothing in this record leads to a finding that the Burkes operated or controlled Ranger Security, LLC so as to commit fraud, an illegal act, or any similarly unlawful act. We cannot say that LaMusga demonstrated any extreme misconduct that rises to the level necessary to invoke the rare use of piercing the corporate veil.

{¶ 34} Finally, during oral argument, LaMusga clarified and expounded upon an issue that was not apparent from her appellate briefing. Specifically, she argued that even if the corporate veil is not pierced, Ivan Burke should be held personally liable for his actions in supervising the guards. In support, she cites *Bowes v. Cincinnati Riverfront Coliseum, Inc.*, 12 Ohio App.3d 12, 465 N.E.2d 904 (1st Dist. 1983), for the proposition that "[a] corporate officer is individually liable [in tort] for injuries to a third party when the corporation owes a duty of care to the third person, the corporation delegates that duty to the officer, the officer breaches that duty through personal fault (whether by malfeasance, misfeasance, or nonfeasance), and the third person is injured as a proximate result of the officer's breach of that duty." *Id.* at 18, quoting *Schaefer v. D & J Produce, Inc.*, 62 Ohio App.2d 53, 403 N.E.2d 1015 (6th Dist. 1978), paragraph three of

the syllabus.

{¶ 35} LaMusga contends that Ivan Burke acted as the guards' supervisor and that he was aware of prior incidents in which the guards acted in an illegal or improper manner by detaining people and by using their firearms while on Summit's property. LaMusga contends that these incidents, along with Burke's knowledge of these incidents, satisfy the second and third elements of a negligent training/supervision claim; i.e. evidence of the employee's incompetence and the employer's actual or constructive knowledge of such incompetence.

{¶ 36} First, LaMusga cites an incident that occurred on November 26, 2011. At that time, Tarbert and another guard were on duty at Summit. The guards were in front of a vehicle when the driver put the vehicle into drive and attempted to drive off. Tarbert and the other guard pulled their guns and aimed them to make the driver stop. They then gave the driver a criminal trespass notice.

{¶ 37} On December 3, 2011, Tarbert and the same guard were at Summit when they noticed three men who smelled of marijuana. The guards approached the men and checked them for weapons. Dayton police were called to the scene.

{¶ 38} The next day, Tarbert and the same guard returned to work at Summit when they received a call from Ivan Burke telling them to make a domestic violence check at apartment 755.[4] The guards went to the apartment and were able to hear yelling. They called Dayton police. The police attempted to make contact with the people in the apartment, but no one answered their knock. Tarbert then observed Price leave through the back door. Tarbert told Price to stop. He then cuffed Price's left hand and escorted

---

[4] This apartment was rented by Price's girlfriend.

him to the police.

{¶ 39} On February 8, 2012, Tarbert and Wissinger were at Summit when they observed Price on the premises. Price had been given a trespass notice by the Dayton police. Price saw the guards and ran into his girlfriend's apartment. He did not answer the door. The guards called Dayton police who responded to the scene.

{¶ 40} That same day, Tarbert and Wissinger observed a man parked at the complex. They noticed him making furtive movements as they approached. They asked the man what he was doing, and they observed an empty syringe in his lap. The guards told the man to remove the keys from the ignition and to exit the vehicle. They conducted a pat-down for safety and placed him in handcuffs. The man informed him that he was there to purchase heroin. He told the guards that he would show them his dealer if they uncuffed him. The guards called the Dayton police. They then observed a man approach the car. They ordered the man to show his hands. The man instead put his hands in his pockets. The guards drew their guns, and the man ran away. Tarbert caught him. Both men were turned over to the police.

{¶ 41} On February 25, 2012, Tarbert and Wissinger were again at work at Summit when they observed Price run into apartment 755. Price then exited the apartment and got into a vehicle. He drove the vehicle toward Wissinger but then reversed and drove back toward Tarbert. He then went forward again toward Wissinger. The guards ordered Price to get out of the car, but Price just revved the engine. Wissinger drew his gun at which time Price drove toward him up onto the curb and the grass.

{¶ 42} Although Ivan Burke was made aware of these incidents, the guards were not reprimanded. LaMusga argues the failure to reprimand constituted a ratification of

the guards' conduct. Thus, she argues that Burke was not only aware of the improper behavior, he condoned it.

{¶ 43} LaMusga does not cite any authority to indicate that the cited incidents constitute incompetent or illegal conduct. The three times that a gun was used involved incidents where the guards reasonably perceived a threat to their safety. As noted, the training forms provided to TSG indicate that a guard may have to use force as part of the job. The times that the guards conducted a pat-down involved situations in which it was reasonable to suspect that the individuals involved might be armed. We simply cannot say that this record supports a finding that the guards acted improperly or incompetently on the dates cited. Thus, the elements of negligent supervision/training have not been established. We find the claim that Ivan Burke is personally liable in tort is without merit.

{¶ 44} We conclude that the trial court did not err in rendering summary judgment in favor of the Burkes. Accordingly, the first and second assignments of error are overruled.

### III. Conclusion

{¶ 45} Both of LaMusga's assignments of error are overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J. and WELBAUM, J., concur.

Copies mailed to:

Sam G. Caras
David M. Deutsch
Brian L. Wildermuth
Lauren K. Epperley
Ray Freudiger
Christopher Carrigg
Michael Mahoney
Frederic Young
Jared Wagner
John Scott
Robert Janes
Georgia Foerstner
Michael DeWitt
Joseph Pappalardo
Colleen Mountcastle
Markus Apelis
Hon. Gregory F. Singer