[Cite as *State v. Presutto-Saghafi*, 2019-Ohio-5373.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

JALEH PRESUTTO-SAGHAFI and
PHILLIP PRESUTTO, JR.

    Appellants

C.A. Nos.    18CA011411
                  18CA011412


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.   16CR093913
                16CR093914

DECISION AND JOURNAL ENTRY

Dated: December 30, 2019

---

TEODOSIO, Presiding Judge.

{¶1}    Appellants, Jaleh Presutto-Saghafi and Phillip Presutto Jr. ("the Presuttos"), appeal from the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2}    The Amherst School District ("the District") participates in a program to serve students with special needs, whereby students spend half the day in school and half the day receiving specialized services outside of school. The parents of these students pay third party service providers out of pocket, submit invoices to the District, and, in turn, receive reimbursement. The Presuttos have a child who was enrolled in the program from July of 2011 to June of 2014. Inconsistencies between the amounts paid by the Presuttos and the amounts reimbursed by the District led to an investigation and, ultimately, criminal charges being filed against the Presuttos.

{¶3} The Presuttos pled guilty to unauthorized use of property and forgery, and the trial court ordered a pre-sentence investigation report ("PSI"). The court later held two restitution hearings. At sentencing, the court sentenced the Presuttos to two years of community control and ordered them to pay restitution in the amount of $36,002.75 to the District along with court costs and supervision fees.

{¶4} The Presuttos now appeal from the trial court's judgment, ordering them to pay restitution in the amount of $36,002.75, and raise one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

THE STATE FAILED TO PROVE THE RESTITUTION FIGURE BY A PREPONDERANCE OF THE EVIDENCE.

{¶5} In their sole assignment of error, the Presuttos argue that the State failed to prove the restitution amount by a preponderance of the evidence and, thus, the trial court erred and abused its discretion in ordering a restitution amount that bore no reasonable relationship to the actual losses suffered. We disagree.

{¶6} This Court has historically reviewed restitution orders under an abuse of discretion standard. *See, e.g., State v. Esterle*, 9th Dist. Medina No. 06CA0003-M, 2007-Ohio-1350, ¶ 5; *State v. Myers*, 9th Dist. Wayne No. 06CA0003, 2006-Ohio-5958, ¶ 12. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶7}  In March of 2016, however, the Supreme Court of Ohio held that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes[,]" or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1.  Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶8}  The term "sentence" is defined as "the sanction or combination of sanctions imposed by the sentencing court on an offender who is convicted of or pleads guilty to an offense."  R.C. 2929.01(EE).  A "sanction" is "any penalty imposed upon an offender who is convicted of or pleads guilty to an offense, as punishment for the offense * * * includ[ing] any sanction imposed pursuant to * * * [R.C.] 2929.18 * * *."  R.C. 2929.01(DD).  R.C. 2929.18(A)(1) authorizes a sentencing court to order financial sanctions, including restitution, to the victim.  Thus, an order of restitution is "indisputably part of the sentence." *State v. Danison*, 105 Ohio St.3d 127, 2005-Ohio-781, ¶ 8.

{¶9}  Since the Supreme Court's decision in *Marcum*, many—but not all—Ohio appellate courts have recognized a shift in the standard being used to review restitution orders on appeal.  While an abuse of discretion standard had generally been used in the past, restitution orders were now being reviewed by most courts under the *Marcum* standard of review.  *See State v. McNeil*, 12th Dist. Warren No. CA2018-09-115, 2019-Ohio-1200, ¶ 9; *State v. Patton*, 4th Dist. Highland No. 18CA9, 2019-Ohio-2769, ¶ 21-23; *State v. Anderson*, 10th Dist. Franklin No. 18AP-103, 2018-Ohio-4618, ¶ 10; *State v. Brown*, 2d Dist. Montgomery Nos. 26945, 26947, 26948, 27249, 27250, 27251, 27419, 27420, and 27421, 2017-Ohio-9225, ¶ 25; *State v.*

*Thornton*, 1st Dist. Hamilton No. C-160501, 2017-Ohio-4037, ¶ 12; *but see State v. Sheets*, 5th Dist. Licking No. 17 CA 44, 2018-Ohio-996, ¶ 14-15 (rejecting the *Marcum* standard of review for restitution orders, and instead continuing to apply an abuse of discretion standard); *State v. Nitsche*, 8th Dist. Cuyahoga No. 103174, 2016-Ohio-3170, ¶ 73, fn. 4 (continuing to apply an abuse of discretion standard and stating *Marcum* is limited to "sentencing-term" challenges, but noting the result under either standard would be the same).

{¶10} The Presuttos urge this Court to review the matter under an abuse of discretion standard, while the State argues that the *Marcum* standard of review applies. Admittedly, this Court has used both standards in its post-*Marcum* era of cases. *See State v. Benko*, 9th Dist. Lorain Nos. 18CA011388 and 18CA011389, 2019-Ohio-3968, ¶ 7 (reviewing restitution under an abuse of discretion standard); *State v. Beverly*, 9th Dist. Summit No. 28627, 2019-Ohio-957, ¶ 15 (reviewing restitution under an abuse of discretion standard); *State v. Bennett*, 9th Dist. Summit No. 28849, 2018-Ohio-3934, ¶ 4 (reviewing restitution under the *Marcum* standard); *State v. Stevens*, 9th Dist. Medina Nos. 16CA0033-M and 16CA0034-M, 2017-Ohio-5482, ¶ 17 (reviewing restitution under an abuse of discretion standard); *State v. Vertucci*, 9th Dist. Summit No. 28205, 2017-Ohio-2838, ¶ 25 (reviewing restitution under an abuse of discretion standard). We agree with the State's alternative argument that, under the facts of this particular case, the trial court's restitution order would be affirmed under either standard of review. *See, e.g., State v. Leyman*, 9th Dist. Medina No. 14CA0037-M, 2016-Ohio-59, ¶ 6, fn. 2 (noting the parties' dispute over the applicable standard of review, but declining to address that issue as the outcome would be the same under either standard); *State v. Watson*, 9th Dist. Summit No. 25915, 2012-Ohio-1624, ¶ 19 (declining to resolve which standard of review to use because the result under either standard would be the same).

{¶11} Restitution may be based on "an amount recommended by the victim, the offender, a [PSI], estimates or receipts indicating the cost of repairing or replacing property, and other information" as long as the amount does not exceed the economic loss suffered by the victim as a result of the commission of the offense. R.C. 2929.18(A)(1). There must be competent, credible evidence in the record from which the court may ascertain the amount of restitution to a reasonable degree of certainty, and the amount ordered must bear a reasonable relationship to the loss suffered by the victim. *State v. Henderson*, 9th Dist. Summit No. 26682, 2013-Ohio-2798, ¶ 7.

{¶12} The trial court in this matter calculated its restitution amount based on the evidence presented by both parties at the restitution hearings held on July 16, 2018, and July 23, 2018. The State presented testimony from both the District's Director of Student Services ("S.W.") and Detective Zachary Horning of the Amherst Police Department. The State also introduced many documents into evidence, including a spreadsheet created by Detective Horning, which listed and organized amounts from various documents such as: individual invoices submitted by the Presuttos; reimbursement checks paid by the District; bills from the Cleveland Clinic, and; the Presuttos' payments to the Cleveland Clinic and to third party tutors. Voluminous documents corresponding to the individual amounts listed in the spreadsheet, as well as the settlement agreement from the Presuttos' first lawsuit against the District were also introduced by the State. The Presuttos introduced into evidence a letter from their attorneys to the District regarding settlement figures for part of 2011 and an attached settlement agreement from the Presuttos' second lawsuit filed against the District. They further introduced a statement noting that the Presuttos paid a bill for $1,576.00, and two emails between Ms. Presutto-Saghafi and a representative of KidLink Neurobehavioral Center.

{¶13} The trial court explained in open court and in great detail during sentencing how, based on the evidence presented, it reached the restitution amount to be imposed. It began with $73,000.00, which was the total amount paid or reimbursed by the District to the Presuttos from 2011 through 2014, and subtracted $11,348.00, which was a settlement amount from a civil action the court found to be billed by the Presuttos' attorneys and properly sent to, and accepted by, the District. The court further subtracted $12,279.75, the total amount the court found as being billed by the Cleveland Clinic, and $13,369.50, the amount the Presuttos paid to the tutors. Based on these calculations, the court ordered restitution in the amount of $36,002.75.

{¶14} The Presuttos argue that the amount of restitution ordered by the court bore no reasonable relationship to the actual loss suffered by the District and was not supported by the evidence. They contend that the State simply "[threw] vague numbers against a wall [to] hope they stick[,]" directing us to S.W.'s testimony in which she "agreed" she had "just thrown numbers out there." However, our review of the transcript reveals that defense counsel presented S.W. with a somewhat compound question during cross-examination, to wit: "And you have testified on direct, you've just thrown numbers out there. I think you - - again, [counsel for the co-defendant] pointed out that those - - several of those amounts were already accounted for; isn't that fair to say? They were part of the settlement?" S.W.'s response to that multi-layered and arguably unclear question was simply, "Correct." Nevertheless, in light of the additional testimony from Detective Horning as to the source of the amounts listed in his spreadsheet as well as the receipts, bills, checks, and other documentary evidence introduced, we cannot agree that S.W.'s response of "Correct" to defense counsel's compound question established that the numbers in the spreadsheet were either inaccurate or "just thrown * * * out there." The record

instead contains competent, credible evidence establishing where the detective obtained the amounts listed in his spreadsheet.

{¶15} The Presuttos further argue that Detective Horning only confirmed certain payments which were made by check and were thus traceable through bank records, but he failed to investigate additional payments that were supposedly made to some tutors in cash. They note that the Detective's spreadsheet includes blank areas where information was either unavailable or unverifiable, which they argue indicates defects or deficiencies in the detective's investigation, not a failure on their part to make payments. As such, the Presuttos are not challenging the reliability of the documentation actually contained in the record, but are instead claiming that *more* records are in existence somewhere and were never discovered through the fault of the State. Yet, the Presuttos never presented any of these speculative documents to the trial court to set off additional amounts from the total amount of restitution owed. *See Vertucci*, 2017-Ohio-2838, ¶ 29. Moreover, certain documents that the Presuttos did, in fact, submit to the District for payment listed some tutors only by first name and last initial, had various dates and times listed, and indicated "paid" at the bottom; yet, no signature or contact information for the tutors were listed. With no way to contact these unknown individuals who were supposedly paid in cash, Detective Horning testified that the police department put out a press release suggesting that additional tutors may exist and asking them to come forward, yet no one responded. The Presuttos pled guilty to unauthorized use of property and forgery in this matter, and we fail to see how their decision to allegedly pay certain mysterious tutors in cash and not keep proper records of those payments would create competent, credible evidence before the trial court that those payments were, in fact, actually made.

**{¶16}** The record before us contains competent, credible evidence from which the trial court could ascertain a restitution amount of $36,002.75 to a reasonable degree of certainty, and the amount bears a reasonable relationship to the loss suffered by the victim. *See Henderson* at ¶ 7. Contrary to the Presuttos' argument that the District sought a "windfall" in this matter, nothing in the record indicates that the amount of restitution exceeded the economic loss suffered by the District. *See* R.C. 2929.18(A)(1). The Presuttos have not demonstrated how the trial court's judgment was unreasonable, arbitrary, or unconscionable. *See Blakemore* at 219. They have also not demonstrated by clear and convincing evidence that either the court's findings are not supported by the record or the restitution amount is otherwise contrary to law. *See Marcum* at ¶ 1. Thus, under either standard of review advanced by the parties, the Presuttos' arguments must fail.

**{¶17}** Accordingly, the Presuttos' sole assignment of error is overruled.

III.

**{¶18}** The Presuttos' sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JOSEPH C. PATITUCE and MEGAN M. PATITUCE, Attorneys at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.