[Cite as *State v. Dumas*, 2023-Ohio-1499.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DAMON DUMAS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0075**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 20 CR 688

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor*,* and *Atty. Edward A. Czopur*, Assistant Prosecuting Attorney, Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th Floor, Youngstown, Ohio  44503, for Plaintiff-Appellee and

*Atty. Donald K. Pond,* 567 East Turkeyfoot Lake Road, Suite 107, Akron, Ohio  44319, for Defendant-Appellant.

Dated:  May 4, 2023

**HANNI, J.**

{¶1} Defendant-Appellant, Damon Dumas, appeals from a Mahoning County Court of Common Pleas judgment entry ordering him to pay $21,987.42 in restitution to Howmet Aerospace-RTI (Howmet). For the following reasons, we affirm the judgment of the trial court.

{¶2} On December 17, 2020, Appellant was indicted for grand theft in violation of R.C. 2913.02(A)(2) and (B)(2), a fourth-degree felony. The indictment alleged that Appellant, with purpose to deprive Howmet of wood pallets and frames, knowingly obtained or exerted control over the pallets beyond the scope of express or implied consent of the owner or person authorized to give consent.

{¶3} On November 17, 2021, Appellant, with counsel, pled guilty to grand theft.

{¶4} At the restitution hearing held on June 9, 2022, the State called Christine Yanssens, an owner and vice president of Iron City Wood Products (Iron City). (Tr. at 7). She stated that she operates the business and is involved in every aspect of the business, including setting up customers and vendors, remitting checks, and the financial portion of the company. (Tr. at 8). She explained that Appellant sent an e-mail to her husband on March 13, 2018 stating that he was the supervisor at RTI Titanium-Arconic and wanted to know if Iron City was interested in buying pallets for Iron City's pallet recycling program. (Tr. at 8).

{¶5} Ms. Yanssens explained that Iron City has a pallet recycling program whereby its drivers pick up wood pallets for recycling, the seller completes a bill of lading to give to the drivers, the drivers transport the pallets to Iron City, and the pallets are sorted to determine those which are recyclable. (Tr. at 24). Iron City then deposits payment for the recyclable items into the seller's account. (Tr. at 23-24).

{¶6} Ms. Yanssens related that she sent Appellant a new vendor set-up packet for the recycling program. (Tr. at 8-9). She identified State's Exhibit 1 as the new supplier set-up sheet that Appellant completed and e-mailed back to her. (Tr. at 10). Appellant listed the company name as RTI Titanium-Arconic, filled in its physical address and phone number, and listed his e-mail address at Arconic. Appellant listed his name and his Arconic e-mail address in the Accounts Payable Contact Information section and in the

Shipping/Receiving Contact Information. (Tr. at 9-11; State's Exh. 1). He listed PNC Bank and his account information in the Banking Information portion for deposit information. (State's Exh. 1).

**{¶7}** Ms. Yanssens also identified State's Exhibit 2, a QuickBooks Report of Iron City, which showed a total amount of $21,987.42 for all transactions between Iron City and Appellant. (Tr. at 11-12). She explained that when Iron City made a direct payment to Arconic/RTI Titanium, she would send Appellant an e-mail notifying him that payment was forthcoming. Ms. Yanssens testified that Exhibit 2 showed payments made from Iron City to Arconic/RTI Titanium from March 20, 2018 through September 2020. (Tr. at 19).

**{¶8}** Upon questioning by Appellant's counsel, Ms. Yanssens noted that the first entry on Exhibit 2 showed a first payment date of March 20, 2018. (Tr. at 17, 23-24). She believed that Iron City's payments were going to Arconic since the vendor set-up sheet that Appellant completed identified RTI Titanium-Arconic. (Tr. at 26, 28).

**{¶9}** Allison Dimoff, Howmet's senior human resources director, stated that she led talent acquisition and management, employee relations, compensation, benefits, training and development. (Tr. at 30). She worked for Howmet for the past three years and when she began there in 2019, it was called Arconic. (Tr. at 31). She explained that the legal entity was RTI Titanium and when the company became Howmet on April 1, 2020, the legal entity remained RTI Titanium. (Tr. at 31). She noted that the employee paychecks contain the name RTI Titanium on them. (Tr. at 31).

**{¶10}** Ms. Dimoff further stated that upon investigation into Appellant's actions, she consulted with Howmet's procurement manager and financial controller. (Tr. at 33). They informed her that RTI Titanium had not done business with Iron City since 2010. (Tr. at 34).

**{¶11}** At the end of the hearing, defense counsel concluded that Howmet was the named entity in the indictment and Ms. Yanssens stated that Howmet was not formed until April 1, 2020. (Tr. at 35). Counsel reasoned that Howmet was therefore only entitled to $3,784.00 in restitution since it was the only entity identified in the indictment and payments were made to Howmet starting on April 1, 2020 forward, as per Exhibit 2. (Tr. at 35).

Case No. 22 MA 0075

**{¶12}** The State countered that RTI Titanium is the legal entity and it was RTI's EIN number that was initially given by Appellant to Iron City. (Tr. at 35).

**{¶13}** After the hearing, the trial court sentenced Appellant to five years of community control and issued a restitution order requiring him to pay "Howmet Aerospace/RTI" the amount of $21,987.42 in restitution. (June 10, 2022 J.E.).

**{¶14}** Appellant filed the instant appeal asserting two assignments of error. In his first assignment of error, Appellant asserts:

> **The trial court erred by ordering restitution covering a period of time prior to the inception and existence of Howmet Aerospace, the victim named in the indictment. (T.d. 38-39) (T.p. June 9, 2022, 40).**

**{¶15}** Appellant contends that under R.C. 2953.08(G), the appellate standard of review for felony sentences is clear and convincing evidence. He submits that it is the victim who bears the burden at a restitution hearing to prove by a preponderance of the evidence the amount of economic loss attributable to the conduct of the defendant. *State v. Young*, 6th Dist. Lucas No. L-19-1189, 2020-Ohio-4943, ¶ 12, citing *State v. Isaacs*, 2nd Dist. Montgomery No. 27414, 2017-Ohio-7637, ¶ 10, and *State v. Scurlock*, 6th Dist. Lucas No. L-15-1200, 2017-Ohio-1219, ¶ 53. Citing *Young, supra* at ¶ 13, Appellant notes that "the amount of the restitution must be supported by competent, credible evidence from which the court can discern the amount of the restitution to a reasonable degree of certainty."

**{¶16}** Appellant further asserts that R.C. 2929.18, the felony financial sanctions statute, and *State v. Haney*, 180 Ohio App.3d 554, 2009-Ohio-149, 906 N.E.2d 472, ¶ 29 (4th Dist.), require that restitution be paid to the victim of the crime and the trial court may no longer order restitution to be paid to third parties. Appellant acknowledges that a victim may be an individual or an entity, such as a business or corporation. However, he identifies the inception dates of corporations, limited liability companies, and partnerships. Appellant argues that Howmet failed to prove by a preponderance of the evidence that

the proper restitution amount was \$21,987.42 and proved only \$4,510.80[1] because this is the amount of loss incurred after Howmet's inception date of April 1, 2020. Appellant notes that Howmet was the only victim identified in the indictment and the theft offense was based on a series of events which began on March 20, 2018, well before Howmet's inception date.

**{¶17}** In its brief, Appellee incorrectly cites R.C. 2929.28, the misdemeanor financial sanctions statute, rather than R.C. 2929.18. In any event, Appellee concedes that the victim bears the burden of proving by a preponderance of the evidence the amount of restitution sought from the defendant. Appellee further agrees that while a trial court need not itemize or otherwise explain how it calculated its restitution order, the record must contain "competent and credible evidence * * * from which the court may ascertain the amount of restitution to a reasonable degree of certainty." *State v. Norman*, 10th Dist. Franklin No. 12AP-505, 2013-Ohio-1908, ¶ 66.

**{¶18}** Notably, Appellee cites *State v. Jones*, 10th Dist. Franklin No. 14AP-80, 2014-Ohio-3740, at ¶ 22, citing *Norman*, *supra,* and asserts that this Court reviews a trial court's restitution order under the abuse of discretion standard. Appellee further asserts under either standard of review, the trial court's restitution order was proper in this case since Appellant pled guilty to theft and did not dispute the total amount of the loss at that time. Appellee submits that the only dispute in this case is the name that should go on the restitution order.

**{¶19}** Appellee also notes that the victim's identity is not a necessary element of grand theft and thus need not appear in the indictment. The State cites *State v. Oliver*, 12th Dist. Clermont No. CA2020-07-041, 2021-Ohio-2543, where the court ordered the defendant to pay restitution to 18 victims and the appellate court upheld the award even though none of the victims were identified in the indictment. Appellee concludes that no matter who the indictment identifies, victims can be added or deleted when the restitution order is issued.

---

[1] This amount differs from that argued by defense counsel at the hearing. *See* Tr. at 35. At the hearing and in the brief, counsel asserted that the restitution amount should be based upon the date of inception of Howmet, which was April 1, 2020. However, based upon the inception date and State's Exhibit 2, the correct amount is the instant amount of \$4,510.80.

**{¶20}** Appellee explains that Howmet is the name under which RTI did business, and there is no legal distinction between a fictitious name and the company operating under it. Appellee contends that the testimony at the sentencing hearing showed that Howmet was the "doing business as" name for RTI, which is the actual company. Appellee concludes that since Howmet was the pseudonym or "dba" for RTI, the trial court did not abuse its discretion in ordering full restitution to Howmet.

**{¶21}** In Ohio, lingering issues exist over the proper standard of appellate review of felony restitution orders. Felony restitution orders had been reviewed under an abuse of discretion standard before the Ohio State Supreme Court decided *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002. The term "abuse of discretion" constitutes more than an error of judgment. "It implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**{¶22}** In 2016, the Ohio Supreme Court decided *Marcum,* and held that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes[,]" or (2) "the sentence is otherwise contrary to law." *Marcum*, s*upra*, at ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. *Marcum* concerned a challenge to the length of a felony sentence. *Supra*, at ¶ 1. The Ohio Supreme Court held that "appellate courts may not use the abuse-of-discretion standard in sentencing-term challenges." *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002.

**{¶23}** Since *Marcum*, this Court, the Fifth District, and the Eighth District Courts of Appeal have continued to apply the abuse of discretion standard of review to felony restitution orders. *See e.g., State v. Smith,* 7th Dist. Belmont No. 20 BE 0022*,* 2021-Ohio-2486, ¶ 20; *State v. Yerkey,* 7th Dist. Columbiana No. 19 CO 0044, 159 N.E.3d 1232, ¶ 17; *State v. Moore*, 5th Dist. Guernsey No. 22 CA 000007, 2022-Ohio-4261, ¶ 11; *State v. Robinson*, 8th Dist. Cuyahoga No. 110467, 2022-Ohio-1311, ¶ 76 ("Normally,

this court reviews a trial court's restitution order for an abuse of discretion. *State v. Pollard*, 8th Dist. Cuyahoga No. 97166, 2012-Ohio-1196, ¶ 7, citing *State v. Marbury*, 104 Ohio App.3d 179, 661 N.E.2d 271 (8th Dist.1995)").

**{¶24}** However, other Ohio appellate courts have applied the clear and convincing standard under R.C. 2929.18(A)(1). *State v. Hensley*, 12th Dist. Warren No. CA2021-06-055, 2023-Ohio-119, ¶ 11; *State v. Brown*, 3d Dist. Paulding No. 11-22-05, 2022-Ohio-4689, ¶ 8 ("Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence if it clearly and convincingly finds that the sentence is contrary law. *State v. Boedicker*, 3d Dist. Allen Nos. 1-22-03 and 1-22-04, 2022-Ohio-2992, ¶ 24, citing *Marcum*, *supra,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1."); *State v. Ceresi,* 11th Dist. Geauga No. 2020-G-0249, 2020-Ohio-5305, 162 N.E.3d 846, ¶ 5 ("Both parties indicate that our standard of review when addressing a challenge to a restitution order is an abuse of discretion. However, since the enactment of H.B. 86, we review felony sentences, which include restitution orders, under R.C. 2953.08(G)(2)."); *State v. Jordan*, 6th Dist. Lucas No. L-19-1165, 2021-Ohio-333, ¶ 7; *State v. Ha*yes, 1st Dist. Hamilton No. C-190461, 2020-Ohio-5322, ¶ 57 ("We review the imposition of restitution as part of a felony sentence to determine whether the sentence complies with R.C. 2953.08 in that it is not contrary to law. *State v. McNear*, 1st Dist. Hamilton No. C-190643, 2020-Ohio-4686, 2020 WL 5820965, ¶ 7, citing *State v. Thornton*, 2017-Ohio-4037, 91 N.E.3d 359, ¶ 12 (1st Dist.)"); *State v. Cantrill*, 6th Dist. Lucas No. L-18-1047, 2020-Ohio-1235, ¶ 87 ("Accordingly, in reviewing the order for restitution, we must determine whether the restitution imposed was contrary to law, rather than reviewing for an abuse of discretion."); *State v. Patton*, 4th Dist. Highland No. 18CA9, 2019-Ohio-2769, ¶ 21-23; *State v. White*, 4th Dist. Adams No. 18CA1080, 2019-Ohio-4288, ¶ 22 ("Generally, we review a restitution order to determine whether it is clearly and convincingly contrary to law. *State v. Patton*, 4th Dist. Highland No. 18CA9, 2019-Ohio-2769, ¶ 23."); *State v. Becraft*, 2d Dist. Clark No. 2016-CA-9, 2017-Ohio-1464, ¶ 18 (applying R.C. 2953.08 appellate review standard after *Marcum*); *State v. Anderson*, 10th Franklin No. 18AP-103, 2018-Ohio-4618 (standard for reviewing felony restitution order is inquiring whether restitution "is clearly and convincingly contrary to law. *State v. Richmond*, 10th Dist. No. 17AP-366, 2018-Ohio-147 [2018 WL 417592], ¶ 8; *State v. Thornton*, 1st Dist. No. C-160501, 2017-Ohio-4037

[91 N.E.3d 359], ¶ 12; *State v. Brown*, 2d Dist. No. 26945, 2017-Ohio-9225 [103 N.E.3d 305], ¶ 25").

{¶25} The Ninth District Court of Appeals recognized the varying applications of the standards of review and admitted to using both standards in the Ninth District post-*Marcum* cases. *State v. Presutto-Saghafi*, 9th Dist. Lorain Nos. 18CA011411 and 18CA011412, 2019-Ohio-5373, ¶ 10 (citing cases). In rendering its decision in *Presutto-Saghafi*, the Ninth District held that it would affirm the trial court's restitution order under either standard of review based upon the facts of the case. *Id.* Thus, the Ninth District declined to choose an applicable standard of review, opting to determine that the trial court's restitution order was affirmed under both standards of review. *Id.*

{¶26} Applying either the abuse of discretion or the clear and convincing standard in this case, we affirm the trial court's restitution order. R.C. 2953.08(G)(2) provides that:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶27} Under R.C. 2953.08(G), we cannot modify or vacate a restitution order unless we clearly and convincingly find either that: (1) the record does not support the restitution order under the relevant statutes enumerated in R.C. 2953.08(G)(2)(a); or (2) the sentence is otherwise contrary to law under R.C. 2923.08(G)(2)(b).

{¶28} The restitution order in this case does not fall under any of the relevant statutes identified in R.C. 2953.058(G)(2)(a). R.C. 2929.13(B) and (D) of section 2929.13

Case No. 22 MA 0075

address community control sanctions. R.C. 2929.14(B)(2)(e) and (C)(4) concern definite prison terms, and R.C. 2929.20(I) deals with judicial release and victim impact statements. Thus, we must clearly and convincingly find that the restitution order was otherwise contrary to law in order to modify or vacate the trial court's restitution order.

**{¶29}** "Otherwise contrary to law" is not defined in R.C. 2953.08(G)(2)(b). However, the Ohio Supreme Court has held that it means " 'in violation of statute or legal regulations at a given time.' " *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 22, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990).

**{¶30}** R.C. 2929.18(A)(1) allows a trial court to order restitution "by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss." A court may base restitution on "an amount recommended by the victim, the offender, a [PSI], estimates or receipts indicating the cost of repairing or replacing property, and other information" as long as the amount does not exceed the economic loss suffered by the victim as a result of the commission of the offense. R.C. 2929.18(A)(1). *Presutto-Saghafi, supra*, 9th Dist. Lorain Nos. 18CA011411 and 18CA011412, 2019-Ohio-5373, ¶ 10. Competent, credible evidence must exist in the record for the court to be able to determine the amount of restitution "to a reasonable degree of certainty, and the amount ordered must bear a reasonable relationship to the loss suffered by the victim." *State v. Henderson*, 9th Dist. Summit No. 26682, 2013-Ohio-2798, ¶ 7.

**{¶31}** In this case, the trial court stated that it based its $21,987.42 restitution order on "the testimony and evidence submitted, that the amount of restitution that you will owe to Howmet Aerospace, also known as RTI Titanium Company, but victim of - - in the indictment is Howmet Aerospace, and that will be the victim for purposes of any order." (Sent. Tr. at 40). Ms. Yanssens' statements at the hearing and State's Exhibit 2, the QuickBooks Report of Iron City, established that Iron City paid Appellant a total amount of $21,987.42 for all transactions between Iron City and Appellant. (Tr. at 11-12). Ms. Yanssens indicated that Iron City made direct payments to Arconic/RTI Titanium through the PNC account number Appellant listed on his new vendor form. Ms. Yanssens also related that Exhibit 2 showed payments made from March 20, 2018 through September

2020 from Iron City to Arconic/RTI Titanium.  (Tr. at 19).  This establishes that Iron City paid the amount of $21,987.42 for pallet recycling.

**{¶32}** Appellant's counsel argued at the hearing that the court should award Howmet restitution beginning on April 1, 2020, the company's inception date.  Counsel reasoned that since the victim named in the indictment was Howmet and not RTI Titanium Company, restitution should be so limited.  (Tr. at 35).  However, the trial court rejected this argument, citing Ms. Dimoff's testimony and the evidence presented that RTI Titanium Company was the legal entity and remained so.  (Tr. at 31).

**{¶33}** A company or entity may qualify as a "victim" entitled to restitution under R.C. 2929.18.  *See State v. Allen*, 159 Ohio St.3d 75, 2019-Ohio-4757, 147 N.E.3d 618 (banks that cashed checks forged by the defendant were "victims" under the restitution statute); and *City of Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167 (entity such as a partnership or corporation qualifies as "victim" entitled to restitution under Marsy's Law, Article I, Section 10a of the Ohio Constitution, but a public corporation such as a municipal government does not.).  While Appellant contends that trial courts may no longer award restitution in criminal cases to third parties, the Ohio Supreme Court addressed this assertion in *Allen, supra*:

> [t]he dissent notes that the former version of R.C. 2929.18 expressly allowed restitution to be paid to third parties, and jumps to the conclusion that by removing this language the legislature somehow meant to bar restitution to banks that were the victims of a crime.  But, the current version of the statute draws no distinction between victims and third parties.  It simply requires a court to assess whether the would-be beneficiary of a restitution order is a victim that suffered an economic loss.

**{¶34}** We cannot clearly and convincingly find that the trial court's restitution order in the amount of $21,987.42 to Howmet was otherwise contrary to law.  Appellant identified "RTI Titanium-Arconic" as the company selling the pallets on the new vendor set-up form. (State's Exh. 1).  State's Exhibits 4 and 5 contained copies of bills paid by Iron City to Appellant as "Arconic-ACH RTI Titanium-Arconic Wheel."  State's Exhibit 6 was the Request for Taxpayer Identification Number and Certification completed by

Appellant and submitted to Iron City. Appellant filled in his name on the W-9 Form and identified the business as RTI Titanium Company. Competent, credible evidence supports the amount that the court determined based upon Ms. Yanssens' statements and State's Exhibit 2. Further, the amount ordered bore a reasonable relationship to the loss suffered to a reasonable degree of certainty.

{¶35} For these same reasons, the trial court did not abuse its discretion in the amount of restitution ordered and to the payee it identified on the restitution order. Based upon the evidence and the statements of Ms. Yanssens and Ms. Dimoff, the trial court did not act arbitrarily, unreasonably or unconscionably in ordering restitution in the amount of $21,987.42 to be paid to Howmet Aerospace-RTI. Ms. Dimoff stated at the hearing that even though the company's name had changed from Arconic to Howmet, the legal entity of RTI Titanium remained and still remains RTI Titanium Company. The trial court ordered that restitution be paid to "Howmet Aerospace-RTI." Appellant identified RTI Titanium as the business involved in these transactions.

{¶36} Accordingly, Appellant's first assignment of error lacks merit and is overruled.

{¶37} In his second assignment of error, Appellant asserts:

**The trial court erred by allowing human resource personnel of Howmet Aerospace to testify, as she was an incompetent witness. (T.p. June 9, 2022, 30-34).**

{¶38} Appellant acknowledges that his counsel did not object to the testimony of Ms. Dimoff at the restitution hearing. However, he contends that the three prongs to establish plain error under Crim. R. 52(B) were met because the trial court allowed Ms. Dimoff to testify about matters outside the scope of her duties and her personal knowledge. He cites Evidence Rules 601 and 602 addressing witness competency and the personal knowledge required of a witness who testifies.

{¶39} Appellant notes that Ms. Dimoff testified that she worked in the human resources department and led "talent acquisition, talent management, employee relations, compensation, benefits, training, and development." (Tr. at 30). He submits that Ms. Dimoff's human resources position did not qualify her to testify about the

company's formation, inception, or governance. He further contends that no evidence demonstrated that Ms. Dimoff had first-hand knowledge about the relationship between Howmet, Arconic, and RTI Titanium. Appellant submits that the trial court's error in permitting Ms. Dimoff to testify as to company formation matters allowed for a defect to arise at the hearing. Appellant contends that the trial court error undermined his substantial right to a correct restitution order.

**{¶40}** Appellee responds that the Ohio Rules of Evidence do not apply at restitution hearings. Appellee alternatively asserts that Ms. Dimoff's testimony did not deviate from any legal rule because she demonstrated knowledge about the naming of the company and testified to it directly.

**{¶41}** The Rules of Evidence do not apply at sentencing hearings. *See State v. Williams,* 23 Ohio St.3d 16, 490 N.E.2d 906 (1986) ("The latter argument is without merit due to the fact that the Rules of Evidence do not apply to sentencing proceedings. Evid.R. 101(C)(3).").

**{¶42}** Moreover, even if the Rules of Evidence did apply, Appellant did not object to Ms. Dimoff's testimony at the hearing. Accordingly, we can perform only a plain error review. A three-part test is used to determine whether plain error exists. *City of Campbell v. Rosario*, 7th Dist. Mahoning No. 16 MA 63, 2018-Ohio-337, ¶ 12, citing *State v. Billman*, 7th Dist. Monroe Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774, 2013 WL 6859096, ¶ 25 (citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002)).

**{¶43}** The first prong requires the existence of an error, *i.e.* "a deviation from a legal rule." *Billman*, at ¶ 25. Second, the error must be plain*, i.e.,* it must be an "obvious" defect in the trial proceedings. *Id.* The third prong requires that the error must have affected "substantial rights." *Id.* This means that the trial court's error affected the outcome of the trial. *Id.* Plain error is a discretionary doctrine the appellate court may choose to use only with the utmost care in exceptional circumstances when required to avoid a manifest miscarriage of justice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 62.

**{¶44}** Applying the Crim. R. 52(B) test, the trial court did not deviate from a legal rule. Evid. R. 601 is entitled "General Rule of Competency" and states the general rule

that "[e]very person is competent to be a witness except as otherwise provided in these rules." Evid. R. 601(A).

**{¶45}** Evidence Rule 601(B) provides a list of persons who may be disqualified by a court. None of the exceptions in Evid. R. 601(B) apply in this case. This section includes instances where a person is unable to express himself or herself or incapable of understanding the witness duty to tell the truth; spouses testifying against one another in certain instances; a police officer in a certain arrest situation; and various expert witness scenarios.

**{¶46}** Evidence Rule 602 is captioned "Lack of personal knowledge" and provides:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses.

**{¶47}** While she did not testify about the formation or governance of the entities, Ms. Dimoff was qualified to discuss the name changes of RTI Titanium and RTI Titanium's continuing existence as the legal entity of Arconic and then Howmet. As senior human resources manager, Ms. Dimoff would have first-hand knowledge of the name changes for the company. She stated that her various duties included "compensation, benefits, training and development." (Tr. at 30). Thus, she would be familiar with the name changes of the company for compensation and benefits purposes, and she testified that the paychecks bore the name of RTI Titanium, even though the company name changed to Howmet. (Tr. at 30). She further recalled that the company's name was Arconic when she first began in March of 2019, then changed to Howmet on April 1, 2020, but the legal entity remained RTI Titanium throughout those changes. (Tr. at 31). She stated that:

> [w]hen I began with the company in March of 2019 we were called Arconic. Our legal entity, however, was RTI Titanium. On April 1, 2020, we became Howmet Aerospace. However, our legal entity remained RTI Titanium and is, to this day, RTI Titanium. In fact, although we are Howmet Aerospace

our employee paychecks still say RTI Titanium on there.  So we have not changed legal entities in the time that I've been there.

(Tr. at 31).

**{¶48}** Moreover, while the indictment identified only Howmet, the judgment entry ordering restitution identified Howmet-RTI. Further, as Ms. Dimoff explained, the actual legal entity did not change, but merely the names of Arconic and Howmet. RTI Titanium remained the legal entity. " 'A corporation may use a name other than its corporate name in the conduct of its business' and may conduct business under a fictitious name. (Citation omitted.)". *End the Noise Inc. v. Kirtland Country Club Comp.*, 11th Dist. Lake No. 2020-L-107, 2021-Ohio-3474, 179 N.E.3d 192, ¶ 37, quoting *Plain Dealer Publishing Co. v. Worrell*, 178 Ohio App.3d 485, 2008-Ohio-4846, 898 N.E.2d 1009, ¶ 16 (9th Dist.); *see also LaMusga v. Summit Square Rehab, LLC*, 2017-Ohio-6907, 94 N.E.3d 1137, ¶ 27-28 (2d Dist.).

**{¶49}** Thus, even presuming that the first prong of the plain error test under Crim. R. 52(B) was met and the trial court deviated from a legal rule, the second prong of the test would fail here as well.  The second prong requires that the legal error must be plain, or an obvious defect in the trial proceedings.  Here, the court's identification of Howmet-RTI as the victim to which restitution was owed does not constitute an obvious defect in the proceedings.  Howmet was the most recent name of the company and RTI has remained the legal entity under which Howmet and Arconic operated.  Accordingly, we find that no plain error exists in this case.

**{¶50}** For these reasons, Appellant's second assignment of error lacks merit and is overruled.

**{¶51}** For the reasons stated above, the trial court's June 10, 2022 judgment entry ordering restitution is affirmed.

Waite, J., concurs.

D'Apolito, P.J, concurs.

Case No. 22 MA 0075

————————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**